Georgia C. **BROWN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19569.

United States Court of Appeals
Eighth Circuit.

Dec. 5, 1969.

Rehearing Denied Jan. 13, 1970.

James A. Stemmler, of Stemmler & Stemmler, St. Louis, Mo., for appellant.

Michael C. Farrar, Atty., Department of Justice, Washington, D. C., for appellee; William D. Ruckelshaus, Asst. Atty. Gen., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., and Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

The plaintiff Georgia C. Brown seeks to recover under the Federal Tort Claims Act, 28 U.S.C. § 1346, for the alleged negligence of a government doctor in not transmitting information regarding the medical condition of plaintiff's husband, who died of a coronary thrombosis. In a trial to the court, Judge James H. Meredith held that the plaintiff failed to prove negligence and dismissed the action. A timely appeal followed.

Plaintiff's husband, James Brown (hereafter referred to as Brown), died on November 6, 1965 at the age of 58. Brown had been chronically and seriously ill for many years. He was the victim of a number of serious diseases including diabetes, chronic bronchitis, hypertension, general arteriosclerosis, arteriosclerotic heart disease, and perhaps disease of the liver and emphysema.

Brown was temporarily discharged in 1957 from his career in the United States Army due to a lung condition that had rendered him 30 per cent disabled. This discharge was finalized in 1963. In 1960 and 1961 Brown's legs were amputated above the knee due to his serious arteriosclerotic condition.

Over the years Brown had received regular treatment for his assorted maladies at the Veteran's Administration Out-patient Clinic in St. Louis, Missouri, and was under the care of Dr. Joseph Levitt, a specialist in internal medicine and the examining physician at the Clinic.

On April 1, 1965, in a regular visit to the Clinic an electrocardiogram was taken by Dr. Levitt which pictured an atypical T-wave pattern, indicating an insufficient supply of blood to the heart (myocardial ischium) due to narrowing of the coronary arteries caused by arteriosclerosis.

On October 29, 1965 Brown made another regular visit to Dr. Levitt. As was the custom he was accompanied by the plaintiff. At this visit Dr. Levitt observed that Brown seemed to have lost some weight and appeared somewhat paler than usual. According to the plaintiff, Brown minimized some numbness felt in his arm by remarking he had slept on it. (Dr. Levitt denied knowing anything about numbness in Brown's arm.) Dr. Levitt examined Brown's heart and lungs and found no unusual condition. An X-ray was taken but not read until a day or two later. It indicated an enlarged heart and perhaps some lung congestion.[1]

On Wednesday, November 3, 1965 plaintiff called Dr. Levitt because, in her words, Brown had taken a turn for the worse, was short of breath at the least exertion, was sleeping all the time, and was not eating. Dr. Levitt explained to plaintiff that government regulations prevented him from making a house call and suggested first that plaintiff bring Brown to the Clinic, which she did not feel able to do because of Brown's weak condition, and alternatively that Brown

---

1. Plaintiff stated at the trial that she was not complaining about the propriety of Dr. Levitt's treatment of Brown on October 29, 1965; and plaintiff's medical expert, Dr. George Oliver, Jr., testified, "as far as that examination [October 29] is concerned there would have been no reason for one to think that the physician should have suspected a coronary occlusion."

be taken to the Veteran's Administration Hospital for further evaluation. Dr. Levitt then arranged for an ambulance to convey Brown to the VA Hospital in St. Louis. Dr. Levitt testified that he had not recommended or ordered Brown to be hospitalized but merely requested that Brown be taken to the Hospital for further evaluation.

No one at the Hospital, including the examining physician, Dr. Robert Cook, had received a recommendation from Dr. Levitt to hospitalize Brown. Dr. Cook testified that at the examination Brown sat in his wheel chair smoking, appeared comfortable, was not pale or sweaty, and was definitely not in acute distress. The examination uncovered nothing out of the ordinary. Brown was breathing normally, his lungs sounded clear, heart rhythm and pulse were good and the abdomen was not distended by fluid. Brown reported his cough was a little worse but this did not appear serious. Dr. Cook learned of the October 29th X-ray and called the Outpatient Clinic where he spoke to the only person available, the chief X-ray technician, who told Dr. Cook there were no signs of pneumonia. Dr. Cook, who had examined Brown previously and was familiar with his history, was aware that Brown was not in good health, but attributed this to his chronically diseased condition, and noting no abrupt changes or acute distress in Brown, determined not to hospitalize him. Dr. Cook testified that even with the benefit of Dr. Levitt's information he would not have hospitalized Brown since he did not find evidence of an acute illness.

After returning home the plaintiff observed that Brown was getting weaker and shaking. Her own physician, Dr. Verda, was unable to come to the house, but one Dr. Clark did come at 10 p. m. on November 3 and prescribed some medicine for Brown. The medicine prescribed was not in treatment of any heart condition. Brown appeared better the next morning, but later that day Brown's condition worsened. The plaintiff testified, "He began to see things. He was noticing people walking through the room. * * * he hadn't eaten. * * * He saw snakes in the trees, * * * he was just gradually getting worse." Plaintiff then decided to take Brown to Scott Air Force Base Hospital. Dr. Clark authorized an ambulance for this purpose. After a thorough examination at Scott Air Force Base by one Dr. Connelly, Brown was again sent home. On November 5, Brown appeared to be much worse, and after a telephone call from the plaintiff Dr. Verda had Brown hospitalized at Bethesda Hospital, a non-government facility. Brown died the next evening. Dr. Verda signed the death certificate. Primary cause of death was stated as acute myocardial infarction due to a coronary occlusion, the latter occurring probably ten days before, though the myocardial infarction could have occurred on the day of Brown's death.

Only two issues were preserved for appeal. The first involves the plaintiff's claim that it was negligent of Dr. Levitt to fail to inform Dr. Cook and the VA Hospital of what plaintiff claims were radical changes in Brown's condition, and of important medical information such as the EKG of April 1, 1965 and the X-ray of October 29. Plaintiff's theory is that with knowledge of this information Dr. Cook would have hospitalized Brown, thus increasing his chance for survival. An EKG test at that time would probably have disclosed any coronary occlusion if one had occurred; and if one had occurred, hospitalization would be definitely indicated and, of course, would have increased his chances of survival, though to what extent is difficult to assess. But according to plaintiff a substantial possibility of survival is all that is necessary to sustain an award, citing Hicks v. United States, 368 F.2d 626 (4th Cir. 1966).[2] Plaintiff's second contention concerns an

2. We accept the principle stated in *Hicks* for the purpose of this appeal but think more elaboration on this principle would be called for if proximate cause were a controlling issue in this case.

alleged error of the trial judge in regard to the admission of evidence derived from medical textbooks.

## NEGLIGENCE OR MALPRACTICE ISSUE

 Under Rule 52(a) of the Federal Rules of Civil Procedure, the District Court's findings of fact must be affirmed unless they are found to be "clearly erroneous." A finding is "clearly erroneous" when, though there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

 We are not left with any uneasy feeling as to Judge Meredith's factual finding nor do we think he has failed to apply correct legal principles. While his factual findings and application of law are broader than the issues raised on appeal, we think his finding of no negligence in the treatment of Brown finds substantial support in the record and most assuredly cannot be characterized as "clearly erroneous."

Judge Meredith in his memorandum opinion mentioned that if Dr. Levitt had been aware of a sudden change in Brown's condition indicating Brown's illness had progressed from the merely chronic to the acute stage, he would have had the responsibility to report this to the doctors at the VA Hospital. He was unable to find evidence that Dr. Levitt should have been aware of such a change. It is evident that Brown was chronically ill and was getting progressively worse.

It is clear from the testimony that Dr. Levitt did not believe on November 3 that Brown's condition had seriously deteriorated to the point of being acute. He testified without contradiction that he sent Brown to the hospital not to be hospitalized but merely for a further evaluation. Plaintiff's report on November 3

that Brown had become short of breath did not necessarily indicate a radical change in Brown's condition. He had had a lung condition for many years with an attendant cough and breathing difficulty which varied in severity from time to time. The doctors previously had requested him to quit smoking, because of these respiratory difficulties. Dr. Levitt similarly could not be held negligent for failure to transmit the April 1 EKG or the October 29 X-ray to the VA Hospital. The former was merely an indication of an increase in the severity of Brown's chronic heart disease. The X-ray showed only an increase in the size of what had previously been an abnormally enlarged heart, and some possible lung congestion.[3]

Each of these factors was an indication of the progressive nature of Brown's diseases and did not indicate an acute illness which Dr. Levitt would be required to report to the examining physician at the VA Hospital. Thus, none of these factors, nor all of them together, indicated that Brown was acutely ill. Furthermore, Dr. Cook was generally aware of Brown's medical history and condition and Dr. Levitt's information, in particular the EKG and X-ray, would only have proved what Dr. Cook in all likelihood had surmised; that Brown's condition had progressively worsened but had not become acute. Dr. Cook's personal examination was sufficient to evaluate Brown's breathing and cough and Dr. Cook found no acute level of distress. In regard to the cough and breathing difficulty, Dr. Levitt was clearly within the standard of a prudent, careful and skillful physician in relying upon the firsthand evaluation of Dr. Cook rather than reporting to him Plaintiff's appraisal that Brown's coughing was worse and his breathing more difficult. Plaintiff could have conveyed this information to Dr. Cook herself. Both Plaintiff's personal physician Dr. Verda and Dr. Clark failed to diagnose or sense that Brown

---

3. The autopsy disclosed that Brown's heart was tremendously enlarged, "about some of the largest we have seen." Its weight was 725 grams as compared to about 300 grams for a normal man of Brown's size and age.

either had coronary occlusion or that one was impending.

■ Missouri law, which is applicable to this tort action, requires a physician to use that degree of care, skill and proficiency which is commonly exercised by the ordinary skillful, careful and prudent physician engaged in similar practice under the same or similar circumstances. Rauschelbach v. Benincasa, 372 S.W.2d 120 (Mo. 1963); Williams v. Chamberlain, 316 S.W.2d 505 (Mo. 1958).

■ If a physician exercises the required degree of skill, he is not liable for an honest error of judgment. Since diagnosis is largely a matter of evaluation and judgment, a mistaken or erroneous diagnosis must be negligently based to create liability. Williams v. Chamberlain, *supra;* Sibert v. Boger, 260 S.W.2d 569 (Mo. 1953). Here, however, we are not concerned with a classic malpractice action based on an erroneous diagnosis, but a claimed failure to disclose pertinent and relevant medical history that would aid in making a correct evaluation of Brown's condition. Plaintiff's reliance on Schwartz v. United States, 230 F.Supp. 536 (E.D. Pa. 1964) is not well taken. *Schwartz* is not factually in point as it is concerned with failure to disclose or scan medical records that would have shown the patient's condition was caused by the presence of highly damaging radioactive contrast dye, which had been placed in the patient's sinus at a Naval Hospital. A proper examination of records in *Schwartz* would have disclosed the cause of the patient's ailments. In the instant case the doctors knew about Brown's deteriorating condition but failed to diagnose his condition as acute. All of the five physicians who examined him from the period of October 29 to November 6, 1965 failed to make a diagnosis of an acute heart condition.

Therefore, the District Court's finding that Dr. Levitt was not negligent is supported by the evidence and is not clearly erroneous.

## EVIDENTIARY ISSUE OR USE OF MEDICAL TEXT

■ Plaintiff maintains her case was prejudiced by the trial court's failure to allow the use of medical treatises in cross-examination of Dr. Cook. Of course, medical treatises, recognized by the expert witness as authoritative, may be used in cross-examination, but are not admissible to prove the probative facts of opinions in the treatises since they are subject to the hearsay rule. Farmers Union Federated Cooperative Shipping Association v. McChesney, 251 F.2d 441, 445 (8th Cir. 1958). However, an expert medical witness may express opinions based upon medical treatises, and an expert medical witness may be cross-examined in regard to an opinion he has expressed through the use of recognized authoritative medical treatises. Reilly v. Pinkus, 338 U.S. 269, 275, 70 S.Ct. 110, 94 L.Ed. 63 (1949); Farmers Union Federated Coop. Shipping Assoc. *supra;* McCormick, Evidence § 296 p. 620 (1959).

■ Dr. Levitt at trial and in his deposition referred to the increased cough and shortness of breath reported to him by plaintiff on November 3 as dyspnea. Dr. Cook during his testimony defined dyspnea as "difficulty in breathing." He went on to say, "[i]t is a rather nonspecific term. Cough would be included in that. The so-called sensation of shortness of breath would be included in that. Wheezing would be included in that." At that point plaintiff attempted to introduce in evidence a statement from a noted medical textbook on the subject of the heart that dyspnea as a symptom of a heart attack should not be confused with a mere cough. But up to that point Dr. Cook had expressed no opinion on that issue nor indicated that he had been the victim of such confusion. Thus, plaintiff's attempt to introduce this textbook evidence was improper since it was not volunteered by Dr. Cook himself, nor was it an attempt to impeach a contrary opinion of Dr. Cook since none had been offered.

Plaintiff also complains that the court's refusal to allow this evidence was so all encompassing as to prevent the use of the medical treatise later in Dr. Cook's testimony when it clearly would have been proper. At the time the trial judge merely said, "I am not concerned about what the textbooks say. Ask the man a question and get his opinion." This is certainly not a blanket refusal to allow textbook materials in evidence. The trial judge further indicated his understanding of the rules on the use of medical treatises by the fact that he did allow Dr. Cook at a later point in his testimony to volunteer an opinion based on an article in a medical journal when it was proper to allow him to do so. We find no error in failing to allow the use of a medical text in the cross-examination of Dr. Cook as no proper foundation had been laid for its use.

Finally, the admission of this evidence would have been dispositive of no relevant issue. The only issue with which we are concerned is whether Dr. Levitt was negligent in failing to report a sudden change in Brown's condition to the examining doctor at the VA Hospital. We have stated that plaintiff's report of an increase in Brown's cough and shortness of breath could reasonably have been considered by Dr. Levitt to have been consistent with Brown's previous bronchial condition and not necessarily indicative of an acute heart ailment; and for what probative significance it might have, this information could have been supplied directly to Dr. Cook by the plaintiff. Thus, Dr. Levitt was not negligent in relying upon the examining doctor's personal examination to determine whether Brown's symptoms indicated disease in an acute stage or that a coronary occlusion had occurred. Whether Dr. Cook may have confused Brown's previous bronchial condition and continuing cough with dyspnea of the sort which indicates a heart attack is irrelevant on the question of Dr. Levitt's negligence.

We find no error in the District Court's findings of fact or conclusions of law.

Judgment affirmed.