392 A.2d 1280

**Martha S. HAMIL, Administratrix of the Estate of Kenneth C. Hamil, Appellant,**

v.

**H. Woodrow BASHLINE, Don L. Bashline, Wayne L. Bashline, Vincent D. D'Angelo, Leslie A. McClimans, John F. Johnston and Anthony Linfante, t/a the Bashline Hospital Association, Ltd.**

Supreme Court of Pennsylvania.

Argued March 6, 1978.

Decided Oct. 5, 1978.

Reargument Denied Nov. 9, 1978.

258

Stephen M. Feldman, Philadelphia, Henry S. Moore, Grove City, for appellant.

George Hardy Rowley, Voorhies, Dilley, Keck, Rowley & Wallace, Greenville, for appellee.

Francis E. Shields, Philadelphia, amicus curiae for Pennsylvania Medical Society.

Joseph J. Musto, Wilkes-Barre, amicus curiae, for Pennsylvania Defense Institute.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-
EROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

The present appeal involves the degree of certainty re-
quired of expert medical testimony to establish, in a medical
malpractice case, the causal relation between the harm suf-
fered by a plaintiff-patient and the alleged negligence of a
doctor or hospital in failing properly to diagnose and treat
the plaintiff's condition in a manner which might have
prevented the harm.  We believe that such causation may be
founded upon expert opinion testimony to the effect that
defendant failed to exercise reasonable care in performing
an undertaking to render services to a patient which the
defendant should recognize as necessary for the other's
protection, that this failure increased the risk of physical
harm to the patient, and that such harm did in fact result.
Because the jury was not properly charged as to this stan-
dard, a new trial will be required.

A few minutes before midnight on May 31, 1968, Mrs.
Martha S. Hamil telephoned defendant, Bashline Hospital
Association, Ltd. (Bashline),[1] and told the night supervisor
that her husband was suffering from severe chest pains.
Mrs. Hamil was advised by the supervisor to bring Mr.
Hamil to the hospital.  Upon the Hamils' arrival, the Bash-
line doctor assigned to the emergency unit could not be
located but another physician, Dr. J. F. Johnston, was
present and ordered an electrocardiogram (EKG) to be tak-
en.  Due to a faulty electrical outlet, the EKG machine
failed to function.  Dr. Johnston then directed that another
machine be used, and thereafter left the hospital.  A second
EKG machine could not be found and, upon receiving no
further aid or treatment, Mrs. Hamil transported her hus-

1.  In addition to Bashline Hospital, seven individuals trading as the
Bashline Hospital were also named as defendants.  For purposes of
convenience, the name "Bashline" or the word "defendant" will be
used herein to designate all of the defendants collectively.

band to the private office of a Dr. Saloom. Mr. Hamil died in Dr. Saloom's office while an EKG was being taken.

In 1969, Martha Hamil, in her capacity as administratrix of the estate of her husband, instituted this action in trespass under the Wrongful Death and Survival Acts. The basis of the complaint was that Bashline failed to employ recognized and available methods of treating decedent's malady, a myocardial infarction. In support of that theory, plaintiff called as its expert medical witness Dr. Cyril Wecht, who outlined the use of beds, oxygen and pain relieving drugs in the treatment of chest pains. Dr. Wecht then expressed his professional opinion that if Bashline had employed the methods and treatment which he had described, Mr. Hamil would have had a 75% chance of surviving the attack he was experiencing when admitted to the hospital. Dr. Wecht also gave it as his opinion that this substantial chance of recovery was terminated by defendant's failure to provide prompt treatment.[2] Defendant's expert witness, Dr. John B. Treadway, opined that death was imminent at the time of Hamil's arrival at the hospital and that the patient would have died regardless of any treatment Bashline might have provided. It was Dr. Treadway's opinion, accordingly, that any negligence of the hospital in the circumstances was immaterial.

Following the introduction of all the evidence, the trial court determined that Dr. Wecht's testimony had failed to establish, with the required degree of medical certainty, that the alleged negligence of the defendant was the proximate cause of plaintiff's harm. The court therefore directed a verdict in favor of the defendant. Upon appeal the Superior Court, relying largely on the Restatement (Second) of Torts (hereafter the "Restatement") § 323(a) (1965) concluded that plaintiff had in fact presented a *prima facie* case of negligence and accordingly reversed the trial court and granted a new trial. See *Hamil v. Bashline*, 224 Pa.Super. 407, 307 A.2d 57 (1976)—(*Bashline I*).

2. The testimony of Dr. Wecht is set forth in detail in the first opinion of the Superior Court in this case. *Hamil v. Bashline*, 224 Pa.Super. 407, 409–414, 307 A.2d 57, 58–61 (1973).

Upon retrial, substantially the same testimony was presented by the parties and the case was this time submitted to the jury. Following deliberation, the jury returned a verdict in favor of defendant and, by answers to special interrogatories, expressed its belief that although Bashline had acted in a negligent manner, plaintiff had failed to establish this negligence as a proximate cause of the decedent's death. A new appeal was taken to the Superior Court in which appellant asserted that the trial court's charge to the jury had failed to comply with the holding of *Bashline I.* Without resolving that issue, a divided Superior Court affirmed the entry of judgment for the defendant on the ground that it was mistaken in ordering the new trial at the time of the first appeal. See *Hamil v. Bashline,* 243 Pa.Super. 227, 364 A.2d 1366 (1976)—(*Bashline II* ).[3] This appeal followed.[4]

## I.

A proper resolution of the present controversy requires that it be viewed in the context of certain well-established principles of tort law.

### (A) Causation

It is settled in the law that except in rare situations not here involved the mere occurrence of an injury

---

**3.** Three members of that court, in an opinion by Judge Price, joined by President Judge Watkins and Judge Van der Voort, rejected the rationale of *Bashline I* and concluded that the entry of a directed verdict in favor of the defendant in the first trial was correct; any error which may have occurred in the second trial was therefore harmless. Judge Jacobs concurred in the result only and Judge Hoffman filed an opinion which upheld the holding of *Bashline I* but which approved the affirmance of judgment for the defendant on the ground that any error in the charge, when viewed in light of the entire record, was harmless. Judge Cercone, in a dissenting opinion joined by Judge Spaeth, also reasserted the rationale of *Bashline I* but agreed with the appellant that the trial court's charge was in error.

**4.** See Section 204(a) of The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 204, 17 P.S. § 211.204(a), since superseded by Section 724(a) of the Judicial Code, 42 Pa.C.S. § 724(a) (effective June 28, 1978).

does not prove negligence and that an admittedly negligent act does not necessarily entail liability; rather even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct and the plaintiff's injury. Stated another way, the defendant's conduct must be shown to have been the proximate cause of plaintiff's injury. *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *Dornan v. Johnston*, 421 Pa. 58, 218 A.2d 808 (1966); *Cuthbert v. Philadelphia*, 417 Pa. 610, 209 A.2d 261 (1965); *Gift v. Palmer*, 392 Pa. 628, 141 A.2d 408 (1958); *Fries v. Ritter*, 381 Pa. 470, 112 A.2d 189 (1955). Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant, *Flickinger Estate v. Ritsky, supra* ; W. Prosser, Law of Torts, § 41 (4th ed. 1971); and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. *Flickinger Estate v. Ritsky, supra; Whitner v. Lojeski*, 437 Pa. 448, 263 A.2d 889 (1970) (plurality opinion); *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965); *Diakolios v. Sears, Roebuck & Co.*, 387 Pa. 184, 127 A.2d 603 (1956); *Simon v. Hudson Coal Co.*, 350 Pa. 82, 38 A.2d 259 (1944); *Frangis v. Duquesne Light Co.*, 232 Pa.Super. 420, 335 A.2d 796 (1975). The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence. *Majors v. Brodhead Hotel, supra; DeAngelis v. Burns*, 404 Pa. 230, 171 A.2d 762 (1961); *Frangis v. Duquesne Light Co., supra* ; Restatement, § 432.

## (B) Proof

It is the plaintiff's burden to prove that the harm suffered was due to the conduct of the defendant. As in many other areas of the law, that burden must be sustained by a preponderance of the evidence. *Cwiakala v. Paal*, 427 Pa. 322, 235 A.2d 145 (1967); *Zeman v. Canonsburg Boro,*

423 Pa. 450, 223 A.2d 728 (1966); *Amon v. Shemaka*, 419 Pa. 314, 214 A.2d 238 (1965). Whether in a particular case that standard has been met with respect to the element of causation is normally a question of fact for the jury; the question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue. *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 180 A.2d 414 (1962); Restatement, § 434; W. Prosser, Law of Torts, § 45 (4th ed. 1971); F. Harper and F. James, The Law of Torts, Vol. 2, § 20.2 (1956). In establishing a *prima facie* case, the plaintiff need not exclude every possible explanation of the accident; it is enough that reasonable minds are able to conclude that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to plaintiff. *Finney v. G.C. Murphy, Co.*, 406 Pa. 555, 178 A.2d 719 (1962). Thus, once a plaintiff has established facts from which a jury could reasonably conclude that defendant's actions were a substantial factor in bringing about the harm,

"  .  .  'the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence,' *Carlson v. A. & P. Corrugated Box Corporation*, 364 Pa. 216, 223, 72 A.2d 290, 293 (1950). See *Yenchko v. Grontkowski*, 385 Pa. 272, 122 A.2d 705 (1956)." *Majors v. Brodhead Hotel, supra*, 416 Pa. at 273, 205 A.2d at 878.

### (C) Expert Testimony

Normally a plaintiff may establish his case of causation with any evidence, direct or circumstantial, which tends to show defendant's actions as the legal cause of his harm. Where, however, the ultimate determinations lie beyond the knowledge or expertise of the average layperson, expert testimony is permitted (and sometimes required) to aid the jury in its understanding of the factors involved and the teaching of the pertinent discipline with respect thereto.

*Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667 (1967); *Weisman v. Sauder Chevrolet Co.*, 402 Pa. 272, 167 A.2d 308 (1961); *Densler v. Metropolitan Edison Co.*, 235 Pa.Super. 585, 345 A.2d 758 (1975). Although in certain situations involving physical injury, it is possible for a jury reasonably to infer causation from the circumstances of an accident or occurrence, *see, e. g., Illingworth v. Pittsburgh Railways Co.*, 331 Pa. 369, 200 A. 89 (1938); *Fenstermaker v. Bodamer*, 195 Pa.Super. 436, 171 A.2d 641 (1961), it is generally acknowledged that the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson. See *Lambert v. Soltis*, 422 Pa. 304, 221 A.2d 173 (1966); *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963). For a plaintiff to make out his cause of action in such a case, therefore, the law requires that expert medical testimony be employed. In addition to its bearing on whether or not the defendant's conduct was negligent, such testimony is needed to establish that the injury in question did, with a reasonable degree of medical certainty, stem from the negligent act alleged. *Commonwealth v. Hamilton*, 459 Pa. 304, 329 A.2d 212 (1974); *Houston v. Cannon-Bowl, Inc.*, 443 Pa. 383, 278 A.2d 908 (1971). Mr. Justice O'Brien, speaking for the Court in *McMahon v. Young*, 442 Pa. 484, 276 A.2d 534 (1971), justified this standard for medical opinion testimony as follows:

"The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a medical expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that the condition was legally caused by the defendant's conduct. Here, the only evidence offered was that it was 'probably' caused, and that is not enough. Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with

sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment." 442 Pa. at 486, 276 A.2d at 535.

## II.

Bearing in mind the principles briefly set forth above, it may be seen that both parties to this appeal advance established precedent in support of their respective positions.

The plaintiff, relying on the testimony of Dr. Wecht that the negligent acts of the medical personnel at Bashline terminated the decedent's considerable chances for survival, asserts that defendant's failure to provide adequate treatment to her husband was a *substantial factor* in bringing about his demise and thus defendant is legally liable unless it can be shown that death would have resulted regardless of the action or inaction of defendant. Defendant Bashline, on the other hand, notes that while Dr. Wecht's testimony may have established that an increased risk of harm to the decedent came about as a result of Bashline's negligent conduct, plaintiff nevertheless failed to introduce any testimony that the negligent acts or omissions did, with a reasonable degree of medical certainty, cause decedent's death; therefore, argues defendant, no *prima facie* case was established, and the case was properly taken from the jury at the first trial. Cf. *Idlette v. Tracy*, 407 Pa. 278, 180 A.2d 37 (1962). We believe that resolution of this conflict lies in the proper interpretation of Section 323(a) of the Restatement, which has been part of our Pennsylvania law of negligence for a dozen years. *DeJesus v. Liberty Mutual Ins. Co.*, 423 Pa. 198, 223 A.2d 849 (1966).

## (A)

Section 323 provides:

"§ 323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize

as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

We agree with the view of the Superior Court majority expressed in *Bashline I* that the effect of § 323(a) is to relax the degree of certitude normally required of plaintiff's evidence in order to make a case for the jury as to whether a defendant may be held liable for the plaintiff's injuries: Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm. Such a conclusion follows from an analysis of the function of Section 323(a).[5]

Section 323(a) recognizes that a particular class of tort actions, of which the case at bar is an example, differs from those cases normally sounding in tort. Whereas typically a plaintiff alleges that a defendant's act or omission set in motion a force which resulted in harm, the theory of the present case is that the defendant's act or omission failed in a duty to protect against harm from another source. To resolve such a claim a fact-finder must consider not only what *did* occur, but also what *might* have occurred, *i. e.*, whether the harm would have resulted from the indepen-

5. In *Bashline II*, the Superior Court plurality interpreted *Bashline I* as dispensing with the requirement of establishing causation in a negligence action. We do not so read *Bashline I*. As was stated in that opinion:

"The defendant is not, under Section 323, liable merely for having increased the risk of death, but the evidence of the increased risk of death is under subsection (a) of that section for the jury's consideration on the factual issue *whether the death was caused by defendant's failure to use reasonable care*." 224 Pa.Super. at 417, 307 A.2d at 62 (emphasis added).

dent source even if defendant had performed his service in a non-negligent manner.[6] Such a determination as to what *might* have happened necessarily requires a weighing of probabilities. As one authoritative text on tort law observes:

> ". . . Thus where it appears *how* an accident happened and also that the victim *might* have saved himself by taking advantage of a precaution which it has been shown defendant negligently failed to afford, courts have generally let· a jury find the failure caused the harm, though it is often a pretty speculative matter whether the precaution would in fact have saved the victim." F. Harper and F. James, The Law of Torts, Vol. 2, § 20.2, at 1113 (1956) (emphasis in original) (footnote omitted).[7]

6. If the answer to such a question is in the affirmative, the defendant ordinarily is not liable. Thus Section 432 of the Restatement provides:

> "§ 432. Negligent Conduct as Necessary Antecedent of Harm
> (1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent."

Comment (b) to this Section is instructive:

> "b. The statement in this Subsection is most frequently, although not exclusively, applicable where the actor's tortious conduct consists in a failure to take some precautions which are required for the protection of another's person or land or chattels. In such case, if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it."

7. See also *Zinnel v. U.S. Shipping Board,* 10 F.2d 47 (2nd Cir. 1925). In that case, in discussing whether a ship's guard rope, the absence of which allegedly caused the plaintiff to be washed overboard, could have prevented the harm, Judge Learned Hand noted:

> "About that we agree no certain conclusion was possible. Nobody could, in the nature of things, be sure that the intestate would have seized the rope, or, if he had not, that it would have stopped his body. But we are not . . . justified, where certainty is impossible, in insisting upon it. We cannot say that there was no likelihood that a rope three feet above the deck . . . would not have saved the seaman. . . . Considering that such lines were run for the express purpose, among others, of protecting seamen, we think it a question about which reasonable men might

■ Such cases by their very nature elude the degree of certainty one would prefer and upon which the law normally insists before a person may be held liable. Nevertheless, in order that an actor is not completely insulated because of uncertainties as to the consequences of his negligent conduct,[8] Section 323(a) tacitly acknowledges this difficulty and permits the issue to go to the jury upon a less than normal threshold of proof. The Fourth Circuit in a case similar to the one at bar, has well stated the justification for this deviation from the normal requirements of proof. In *Hicks v. United States,* 368 F.2d 626, 632 (4th Cir. 1968), the court stated:

> "When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures

at least differ whether the intestate would not have been saved, had it been there." 10 F.2d at 49.
Similarly, the Restatement acknowledges the difficulty of isolating the causal factor in such cases. See Comment (b) to § 433 B (Burden of Proof) of the Restatement which provides:
"b. The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He is not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case. Thus when a child is drowned in a swimming pool, no one can say with absolute certainty that a lifeguard would have saved him; but the common experience of the community permits the conclusion that the guard would more probably than not have done so, and hence that the absence of the guard has played a substantial part in bringing about the death of the child. Such questions are normally for the jury, and the court may seldom rule on them as matters of law."

8. It should not be overlooked that the concept of proximate cause is often "purely one of policy, of our inadequately expressed ideas of what justice demands." W. Prosser, Law of Torts, § 41, at 237 (4th ed. 1971).

as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The ·law does not in the existing circumstances require the plaintiff to show to a certainty that the patient would have lived had she been hospitalized and operated on promptly."

We agree with this statement of the law and hold that once a plaintiff has demonstrated that defendant's acts or omissions, in a situation to which Section 323(a) applies, have increased the risk of harm to another,[9] such evidence furnishes a basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact.

**9.** The quantum of proof necessary to warrant a jury verdict for the plaintiff is, as we have stated earlier, see p. 265, *supra*, a preponderance of the evidence. This is made clear in Comment (a) to Section 433B of the Restatement:

"a. Subsection (1) states the general rule [that the burden of proof as to causation is on the plaintiff]. As on other issues in civil cases, the plaintiff is required to produce evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered, and to sustain his burden of proof by a preponderance of the evidence. This means that he must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

*See also Cooper v. Sisters of Charity of Cincinnati, Inc.,* 27 Ohio St.2d 242, 272 N.E.2d 97 (1971). In the instant case, Dr. Wecht testified to a 75% chance of recovery had prompt treatment been administered to Mr. Hamil by Bashline; this was sufficient basis upon which the jury could have concluded that it was more likely than not that the defendant's omissions were a substantial factor in causing Mr. Hamil's death. Of course, as was done here, a defendant may present expert testimony to the opposite effect, *i. e.,* the unlikelihood of survival even had the defendant exercised due care; as always, resolution of conflicting testimony is for the jury.

(B)

In light of our interpretation of Section 323(a), it follows that where medical causation is a factor in a case coming within that Section, it is not necessary that the plaintiff introduce medical evidence—in addition to that already adduced to prove defendant's conduct increased the risk of harm—to establish that the negligence asserted resulted in plaintiff's injury. Rather, once the jury is apprised of the likelihood that defendant's conduct resulted in plaintiff's harm, that Section leaves to the jury, and not the medical expert, the task of balancing probabilities. In so saying we do not intend to undermine the well-established standard of "reasonable degree of medical certainty" as the accepted norm for medical opinions on causation. But we think it would be unreasonable and unrealistic in this type of case to expect a physician to state with a "reasonable degree of medical certainty" what *might* have happened when the law (Section 323(a)) recognizes the contingencies involved.[10] See generally D. Danner and E. Segall, Mediocolegal Causation: A Source of Professional Misunderstanding, 3 Am.J.L. & Med. 303 (1978). Where there is at issue the adequacy of medical services rendered in a fact situation to which Section 323(a) applies, therefore, a *prima facie* case of liability is established where expert medical testimony is presented to the effect that defendant's conduct did, with a reasonable degree of medical certainty, increase the risk that the harm sustained by plaintiff would occur.[11]

10. Past decisions relative to medical prognosis as to a plaintiff's physical condition in the future for the purpose of determining damages recognized that there are limits to the desideratum of certainty. See e. g., *Boyle v. Pennsylvania Railroad Company,* 403 Pa. 614, 170 A.2d 865 (1961); *Walsh v. Brody,* 220 Pa.Super. 293, 286 A.2d 666 (1971); *Schwegel v. Goldberg,* 209 Pa.Super. 280, 228 A.2d 405 (1967). While these cases reaffirm the general rule as to certainty in medical opinion testimony to show causation, they nevertheless implicitly acknowledge the problems involved in opining as to what *might* happen as distinguished from giving an opinion based on what *did* happen.

11. Our holding is in accord with the weight of authority in other jurisdictions. *Voegelis v. Lewis,* 568 F.2d 89 (8th Cir. 1977); *Daniels v. Hadley Memorial Hospital,* 185 U.S.App.D.C. 84, 566 F.2d 749

## III.

In light of the discussion in part II hereof it is clear that in the case before us the testimony of Dr. Wecht was sufficient to create a *prima facie* case of causation and that therefore the lower court was correct in submitting the issue of negligence to the jury under Section 323(a) of the Restatement. It becomes necessary, then, to decide appellant's contention that the trial court erred in its charge to the jury under that Section.[12]

At the request of Bashline[13] and over plaintiff's timely objection, the trial court in its charge to the jury gave the following instruction.

(1977); *McBride v. United States,* 462 F.2d 72 (9th Cir. 1972)—(applying the law of Hawaii); *Jeanes v. Milner,* 428 F.2d 598 (8th Cir. 1970)-(applying the law of Arkansas); *Bender v. Dingwerth,* 425 F.2d 378 (5th Cir. 1970); *Brown v. United States,* 419 F.2d 337 (8th Cir. 1969)—(applying the law of Missouri); *Clark v. United States,* 402 F.2d 950 (4th Cir. 1968); *Hicks v. United States,* 368 F.2d 626 (4th Cir. 1966); *Rosario v. American Export-Isbrandtsen Lines, Inc.,* 395 F.Supp. 1192 (E.D.Pa.1975), rev'd on other grounds, 531 F.2d 1227 (3rd Cir. 1976); *Schuler v. Berger,* 275 F.Supp. 120 (E.D.Pa.1967), aff'd 395 F.2d 212 (3rd Cir. 1968); *Speed v. State,* —— Iowa ——, 240 N.W.2d 901 (1976); *Kallenberg v. Beth Israel Hospital,* 45 A.D.2d 177, 257 N.Y.S.2d 508 (1974), aff'd 37 N.Y.2d 718, 374 N.Y.S.2d 615, 337 N.E.2d 128 (1974); *Thomas v. Corso,* 265 Md. 84, 288 A.2d 379 (1972); *Cooper v. Sisters of Charity of Cincinnati, Inc.,* 27 Ohio St.2d 242, 272 N.E.2d 97 (1971); *Whitfield v. Whittaker Memorial Hospital,* 210 Va. 176, 169 S.E.2d 563 (1969).

**12.** As noted earlier, a majority of the Superior Court did not reach the propriety of the jury instructions. See n.3, *supra.* It would therefore be procedurally correct to remand the case to that court to enable it to consider the matter. The full charge is in the record now before us, however, and the parties indicate their desire that the adequacy of the charge with respect to this strictly legal point be determined on this appeal. Accordingly, in the interest of avoiding further delay in this already prolonged litigation, we shall decide the question at this time.

**13.** The point for charge is submitted by the defendant as follows: "Unless it is certain that Mr. Hamil would have died without treatment, his chances for life were not terminated by any failure of the defendants to treat him and such failure cannot be considered a proximate cause of his death."
The trial court accepted the charge but modified it slightly by eliminating the words "it is certain that" in the first line, so that it read as indicated in the text.

"Unless Mr. Hamil would have died without treatment, his chances for life were not terminated by any failure of the defendants to treat him and such failure cannot be considered a proximate cause of his death."

■ Our first observation is that although the total charge as given by the court was painstaking, thorough and accurate, we find the particular instruction here challenged to be, at the least, confusing. More serious, however, is the unmistakable implication in this passage that defendant's negligence had to be the *sole* cause of death in order to bring liability to the defendant when, in fact, liability could attach if the negligence of the defendant were but a substantial factor in bringing about the death. See discussion, *supra*. In view of the fact that causation *vel non* was the critical issue in the case,[14] we are unable to conclude that this misleading statement of the law, even when read in the context of the unexceptionable charge as a whole, was harmless error or that it did not contribute to the verdict. We conclude that a new trial must be had.

The order of the Superior Court is vacated and the case is remanded to the court of common pleas for a new trial.

14. The answers to the special interrogatories to the jury indicated that causation was the element on which plaintiff's proof failed.