419 A.2d 1274

**James R. QUINLAN, Appellant,**

v.

**Andrew J. BROWN.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed May 2, 1980.

Appeal Granted and Judgment Reversed Nov. 12, 1980.

530

Kenneth W. Behrend, Pittsburgh, for appellant.

John W. Jordan, IV, Pittsburgh, for appellee.

Before HESTER, MONTGOMERY and LIPEZ, JJ.

MONTGOMERY, Judge:

The Plaintiff–Appellant James R. Quinlan, instituted an action for injuries which he initially sustained in the course of his employment, and which he claims were exacerbated by the negligence and medical malpractice of Defendant–Appellee, Dr. Andrew J. Brown. After a jury verdict for Defendant, and the denial of Plaintiff's motion for new trial, the instant appeal was filed in our Court.

The record reveals that on July 9, 1970, while employed as a machinist at the Mesta Machine Company in Homestead, Pennsylvania, Appellant received a continuous shock from direct electrical current when he grasped a lamp above his work area with his left hand. The electrical current apparently prevented him from removing his hand until, with considerable effort, he was able to pull it away. In doing so, however, he injured his left shoulder. He was taken to nearby Homestead Hospital where he was examined, treated and advised by the Appellee, a specialist in general surgery and industrial injuries.

Dr. Brown's examination included manipulation of Appellant's injured shoulder, but did not include having x–rays taken of Appellant's arm or shoulder. Conflicting expert testimony was presented at trial as to whether the Appellee's examination in this regard was consistent with accepted medical procedures.

Appellee diagnosed Appellant's injury as a rotator cuff injury and recommended, among other things, exercise of

the shoulder and physical therapy. Appellant duly reported to the Therapy Department of the Hospital for a total of fourteen sessions. Although he continually complained of pain to his therapist, he never apprised the Appellee of the problems that he was having with therapy.

In August, 1970, Appellant consulted his family physician, who took a history, examined his shoulder, and ordered x–rays. A few days later, his physician sent Appellant for additional x–rays, and referred him to an orthopedic surgeon, Dr. Ferguson. Dr. Ferguson took further x–rays and then scheduled surgery to treat a posterior dislocation of Appellant's left shoulder. During surgery, Dr. Ferguson discovered a depressed fracture of the humeral head.

Shortly thereafter, Appellant filed suit seeking to recover for injuries which he alleged were compounded by Dr. Brown's failure to properly diagnose the initial work–related injury. The jury verdict for Appellee resulted after a five day trial. As noted earlier, Appellant then filed a motion for a new trial, which was denied.

On this appeal, Appellant first contends that a substantial change in the law relating to the manner of proving causation occurred after the trial, and that his request for a new trial should have been granted on this basis. Specifically, he refers to the decision of the Pennsylvania Supreme Court in *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), which, in pertinent part, addressed the problem that arises when a plaintiff establishes with a reasonable degree of medical certainty that the defendant's conduct increased his risk of harm, but cannot establish with medical certainty that such harm would not have been suffered even in the absence of any negligence on the part of the defendant.[1] In resolving this conflict, the court relied upon the Restatement (Second)

---

1. The jury verdict in the instant case was returned on September 29, 1977. The Plaintiff filed a timely Motion for New Trial, within 10 days after the verdict. The decision in *Hamil v. Bashline, supra*, was filed on October 5, 1978, prior to any ruling on the Motion for New Trial in this case. Plaintiff immediately filed an amended Motion for New Trial, including his claims based upon the *Hamil* holding regard-

of Torts, Section 323(a), and held that once a plaintiff has demonstrated that the defendant's acts or omissions in the performance or undertaking to render services have increased the risk of harm, such evidence furnishes a basis for the jury to go further and find that the increased risk was in turn a substantial factor in bringing about the resultant harm.[2] In addition, the Court found that where medical causation is a factor, and where the nature of the case eludes the degree of certainty that one would prefer and upon which the law would normally insist, Section 323(a) "tacitly acknowledges this difficulty and permits the issue to go to the jury upon a less than normal threshold of proof." 481 Pa. at 271, 392 A.2d at 1287. Under such circumstances, it is not necessary that the plaintiff introduce, *in addition to* evidence already adduced showing that the defendant's conduct increased the risk of harm, medical evidence to establish that the negligence asserted was *the cause* of the plaintiff's injury. Rather, it is the task of the jury, and not the medical expert, to balance the probabilities based upon the inferences which it may draw from the evidence presented.

Thus, after *Hamil*, where a medical certainty of causation cannot be established, once it has been shown that the

ing the law of causation. It has been held that a claim based upon a newly announced change in the applicable law may be timely raised, in these unusual circumstances, if submitted at the post–verdict motion stage of a case, either before a final decision is rendered on such motions, or upon the granting of reargument or reconsideration by the lower court. See *Azzarello v. Black Brothers Company, Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978); *In Re: Estate of Riley*, 459 Pa. 428, 329 A.2d 511 (1974), cert. denied, 421 U.S. 971, 95 S.Ct. 1966, 44 L.Ed.2d 462 (1975).

2. The plaintiff's expert in *Hamil* could only testify that the defendant's negligence had deprived the decedent of a 75% chance of recovery, thus establishing a probability of an increase in the risk of harm as a result of the defendant's conduct. The defendant's expert testified that any negligence on the part of the hospital in the circumstances was immaterial. The trial court determined that the plaintiff's expert's testimony had failed to establish, with the required degree of medical certainty, that the alleged negligence of the defendant was the proximate cause of the plaintiff's harm. 481 Pa. at 263, 392 A.2d at 1283.

defendant's conduct increased the risk of harm, a jury may reach the conclusion that the negligence asserted was a substantial factor in the harm sustained by the plaintiff. It is not required that it be established with certainty that such harm would not have occurred even if the defendant had not been negligent, or that the expert testimony in this regard be buttressed by additional medical evidence.

The Appellant asserts that the *Hamil* holding requires that he be granted a new trial to enable him to ask his medical expert whether Appellee's alleged negligence increased his risk of suffering certain injuries. However, we are not confronted here, nor was Appellant confronted at trial, with the problem addressed in *Hamil*. The record shows that Appellant's counsel elicited testimony from his medical expert that Dr. Brown's treatment had deviated from the proper standard of care. The direct examination then continued as follows:

"Q. Doctor, do you have an opinion of whether or not the pain Mr. Quinlan suffered after he saw the defendant on the 9th until the time of his operation with a reasonable degree of medical certainty was substantially contributed to by the deviations in the standards of care rendered Mr. Quinlan by the defendant?

A. I have an opinion.

Q. What is the opinion?

A. It was caused by the deviation which I described previously."

\* \* \* \* \* \*

"Q. Doctor, do you have an opinion whether the deviations that you found were substantially a contributing cause to the operation that Mr. Quinlan eventually had?

A. Yes, I have an opinion.

Q. What is the opinion?

A. In my opinion it was."

Finally, in concluding his direct examination of the expert, Appellant's counsel posed the following question:

"Q. Doctor, to a reasonable degree of medical certainty do you have an opinion whether those limitations in motion that you found were permanent when you examined Mr. Quinlan, were they substantially contributed to or caused by the deviations in the standard of care given Mr. Quinlan by the defendant?

A. I have an opinion, sir.

Q. What is your opinion?

A. In my opinion they were."

■ The record, therefore, plainly reveals that Appellant's expert was permitted to testify that Dr. Brown's conduct was a substantial causal factor in the injuries sustained by Appellant. It is clear that the rationale of *Hamil* is applicable in those situations wherein the nature of the case inhibits proof of causation to a reasonable degree of medical certainty, and since the circumstances of the present case were such as to permit Appellant's expert to couch his testimony in terms of "a reasonable degree of certainty" on the issue of causation, Appellant's reliance on *Hamil* is misplaced. Appellant elicited much *stronger* testimony than an opinion that the Appellee's conduct *merely increased the risk* of the injuries Appellant suffered. Thus, we find no merit in Appellant's assertion that the change in the law stemming from the *Hamil* decision should afford him another opportunity to convince a fact–finder upon less compelling testimony and proof, that the Appellee should be held liable to him for damages.

■ Appellant's second contention is that the Appellee made certain admissions in the course of his testimony which should have been set forth in the charge to the jury as conclusively finding judicial admissions. At the close of the court's charge, Appellant's counsel requested that these admissions be recited to the jury as additional instructions. We note at the outset that Appellant's request was presented to the court orally. Pennsylvania Rule of Civil Procedure 226 provides, in pertinent part, that:

"Attorneys shall hand copies of requested points for charge to the trial judge and to the opposing attorneys before the closing addresses to the jury are begun."

Appellant, however, did not submit points for charge dealing with the admissions to which he makes reference, prior to the closing arguments or prior to the charge.

No adequate reason is advanced to explain why Appellant should not have been held to the requirements of this Rule.[3] Solely as a result of Appellant's failure to comply with the Rule, we would reject this claim of error. However, even in the absence of the Appellant's violation of the Rule, if we considered the merits of Appellant's claim, we could not disagree with the conclusion of the lower court that: "To have charged the jury as requested would have highlighted an important but minute portion of five days of testimony and unfairly prejudiced the defendant." We find that the refusal of the court to charge the jury on the Appellee's admissions may not provide a basis for reversing the jury verdict and granting Appellant a new trial.

Appellant next asserts that the lower court erred in arranging for jurors to be paid their fees before the charge and their deliberations. It is argued that the Court thereby prejudiced the jury against the Plaintiff by indirectly sug-

---

**3.** Appellant points out that a well known treatise on practice in our Commonwealth, Goodrich–Amram 2d, provides in Section 226:1.1, with respect to Rule 226: "Additional request for instructions submitted upon the conclusion of the charge, whether made upon the suggestion of the Court or the initiative of the Attorneys, need not be in writing." The matters concerning admissions which Appellant now urges should have been included in the charge were not the type of minor corrections which are frequently offered orally by counsel at the conclusion of the charge to clear up possible minor problems in the charge. It is to such requests that the sentence from Goodrich–Amram appears to refer. In the instant case, Appellant was or should have been aware of the purported admissions before the court began its charge to the jury. In such circumstances, we can discern no valid excuse for the Appellant's failure to include the matter in a written request, prior to the charge, as the Rule requires. As Goodrich–Amram 2d also provides in Section 226:1.1, with reference to Rule 226: "Although not expressly stated, the Rule contemplates that points for charge will be in writing as copies of the points are to be handed to the trial judge and to opposing counsel."

gesting that they reach a quick decision. The lower court Opinion explains that the payment was arranged to coincide with the jurors' luncheon break and that this was done solely for the convenience of the jury, which was expected to be in deliberations when the payment office closed for the day. By taking such steps, we believe the trial judge sensibly attempted to obviate any concern for the passage of time by the jurors during their deliberations. Also, the judge wanted to help the jurors avoid a return trip to the Courthouse at a later date to collect their fees. We find nothing improper in the procedure employed below. Indeed, if this procedure had any effect whatsoever on the deliberative processes of the jury, it would most likely have been the opposite one to that which Appellant now asserts.

Appellant's final claim for relief arises from certain allegedly improper statements made by Appellee's counsel during his summation. The statements purportedly were opinions offered by counsel with respect to the credibility of certain testimony of Appellant, Appellant's expert witness, and the Appellee. Solely for purposes of discussion on this point, we will adopt Appellant's version of such commentary as correct, and agree that the statements were improper closing argument. At the close of Appellee's counsel's summation, Appellant objected to the comments and requested that the court charge the jury as follows:

". . . It is highly improper for any lawyer in a closing address to give his own personal beliefs. . . .
Also, such expression and beliefs are violative of the code of professional responsibility of lawyers . . ."

The court refused this request. In its charge, however, the court engaged in a lengthy cautionary instruction, admonishing the jurors that they were "not even to consider their [the lawyers'] opinions" and that they should "disregard" them.

The resolution of whether or not remarks made by counsel in an argument to the jury should warrant a new trial requires a determination based upon an assessment of the circumstances under which the statements were made

538

and the precaution taken by the court and counsel to prevent such remarks from having a prejudicial effect. *Martin v. Philadelphia Suburban Transport Co.*, 435 Pa. 391, 257 A.2d 535 (1967). In the present case, we find that whatever prejudicial effect the statements complained of may have had on the jury, they were amply cured by the excellent cautionary instructions which the court provided the jury.

We find that Appellant has failed to advance any claim which would justify the grant of a new trial.

Affirmed.