735 F.2d 90
 In re Karl Heinz DOBROWSKY, Individually and t/a Alster Tool
Co., and Jointly with Ruth Gerda Dobrowsky, Debtors.
Karl Heinz DOBROWSKY, Appellant
v.
The HANOVER INSURANCE CO.
 No. 83-1701.
 United States Court of Appeals,
Third Circuit.
 Argued April 24, 1984.
Decided May 24, 1984.
 
 Jerrold V. Moss (argued), Eric M. Hocky, Rubin, Quinn & Moss, Philadelphia, Pa., for Karl Heinz Dobrowsky.
 Charles A. Harad (argued), Judith A. Love, Charles A. Harad & Associates, Philadelphia, Pa., for the Hanover Ins. Co.
 Before ADAMS and BECKER, Circuit Judges, and SAROKIN, District Judge.*
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 Karl Heinz Dobrowsky, a Chapter 11 debtor, appeals from a judgment of the district court that affirmed an order of the bankruptcy court denying his claim for damages against the Hanover Insurance Co. (Hanover). The claim asserted under the Pennsylvania No-Fault Motor Vehicle Insurance Act[1] arises from injuries sustained by Dobrowsky in an automobile accident that occurred in 1981. The primary issue before us is whether the bankruptcy court employed an improper burden of proof in evaluating the medical evidence. We hold that it did and remand.
 
 A.
 
 2
 On March 23, 1981, Dobrowsky was in an automobile accident in which he suffered head and back injuries. At the time of the accident Dobrowsky was insured under an automobile insurance policy issued by Hanover. Hanover paid all of Dobrowsky's medical expenses from March 23, 1981 until August 24, 1981 and furnished work-loss benefits from April 5, 1981 through August 21, 1981. In September, Hanover informed Dobrowsky that, retroactive to August 19, 1981, it would not honor his claims for no-fault benefits because it had determined that medical treatment was no longer indicated.
 
 
 3
 Responding to Hanover's decision to discontinue benefits, Dobrowsky filed a complaint on February 5, 1982, to recover benefits under the Pennsylvania no-fault insurance act. In his complaint, Dobrowsky alleged that: 1) he continued to receive needed medical treatment for injuries sustained in the March 23 accident and had incurred $5,252.00 in unreimbursed expenses, and 2) as a result of the accident, he had been unable to work through December 31, 1981, and therefore was entitled to $4,294.00 in additional work-loss benefits. To support these allegations, Dobrowsky asserted that, six months after the accident, he developed disabling symptoms including headaches, depression, fatigue, acute anxiety, blackouts, and general malaise for which he sought treatment from Dr. Arnold Sadwin, a board-certified neuropsychiatrist. Hanover denied any obligation to pay no-fault benefits accruing after August 19, 1981 and counterclaimed for overpayment of work loss benefits.
 
 
 4
 During a bench trial in the bankruptcy court, Dr. Sadwin testified that Dobrowsky exhibited symptoms of post-concussion syndrome which were precipitated by the head trauma sustained in the car accident. Drs. Harvey Lisgar and Gilbert Kasirky, Dobrowsky's primary physicians, and other medical and psychological specialists called by Hanover, offered testimony, however, that contradicted both Dr. Sadwin's diagnosis and his theory of causation.
 
 
 5
 After reviewing all the medical testimony, the bankruptcy court found that Dobrowsky had "not met his burden of proving by unequivocal medical evidence that his alleged post-concussion syndrome and accompanying symptoms were caused by the March 23, 1981 accident." As a result, the bankruptcy court, 26 B.R. 319, denied Dobrowsky's claims against Hanover and granted Hanover's counterclaim for overpaid benefits.
 
 
 6
 Dobrowsky appealed this decision to the district court. The district court concluded that the bankruptcy court's determination was not clearly erroneous because "plaintiff did not sustain its burden of proof by a preponderance of the evidence that the injuries complained of after August 19, 1981 were caused by the accident...."
 
 B.
 
 7
 Although the parties did not question the bankruptcy court's jurisdiction over an insurance claim based on state law, we believe it appropriate to consider briefly the basis of that court's authority in this case. The predicate for the bankruptcy court's assumption of jurisdiction over the insurance claim was that Dobrowsky had earlier filed a Chapter 11 petition for reorganization in that court. Under the Bankruptcy Reform Act of 1978, the bankruptcy court was empowered to adjudicate all "civil proceedings ... related to cases under Title 11." 28 U.S.C. Secs. 1471(b) and (c) (1976 and Supp. III).
 
 
 8
 Effective December 23, 1982, however, the Supreme Court invalidated the jurisdiction of the bankruptcy courts over such "related" claims. Northern Pipe Line Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In Northern Pipe Line, the Court held that the judicial power of the United States to adjudicate private common law rights, in that case the right to recover damages in a contract action, must be vested in courts whose judges enjoy the protection of Article III of the Constitution, including life tenure. Id. 102 S.Ct. at 2871. The bankruptcy court's exercise of jurisdiction over a state law tort claim would appear to fall squarely within the prohibition of Northern Pipe Line.[2] Because the bankruptcy court, however, entered its order on December 20, 1982, three days before Northern Pipe Line went into effect, and because the Supreme Court specifically declared that Northern Pipe Line was prospective only, the bankruptcy court properly exercised its jurisdiction under Secs. 1471(b) and (c). See Coastal Steel v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 198 (3d Cir.1983).
 
 
 9
 The main issue presented on appeal is whether the district court erred as a matter of law in concluding that the bankruptcy court had employed the proper burden of proof.
 
 
 10
 Under Pennsylvania law, which the parties concede is controlling in reviewing the adjudication of Dobrowsky's claim under the Pennsylvania no-fault statute, when an injury is not the "obvious, natural or probable result" of an accident, the plaintiff has the preliminary burden of demonstrating causation by introducing expert medical testimony. Kravinsky v. Glover, 263 Pa.Super. 8, 396 A.2d 1349 (1979). In such a situation the Pennsylvania courts require that the plaintiff's expert testify with "reasonable certainty" that "the result in question did come from the cause alleged," or that the accident was a substantial factor in bringing about the injury. Id. at 1355-56. Once the plaintiff has introduced the threshold expert medical testimony, the trier of fact must determine, considering all the evidence presented at trial, whether the plaintiff has established "by a preponderance of the evidence" a causal connection between the injury and the accident. Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280, 1285 (1978).
 
 
 11
 At various points throughout its opinion, however, the bankruptcy court appeared to hold that Dobrowsky failed to sustain his burden of proving, by unequivocal medical testimony, that the accident caused the injury. For example, the bankruptcy judge concluded that:
 
 
 12
 the debtor has not proven by unequivocal medical testimony that the alleged post-concussion syndrome was causally connected to the accident in question or that the physical therapy received after August 24, 1981, was for a condition caused by the accident....
 
 
 13
 In short, the debtor has not met his burden of proving, by unequivocal medical evidence, that his alleged post-concussion syndrome and accompanying symptoms were caused by the March 23, 1981 accident.... (emphasis added)
 
 
 14
 These determinations suggest that the bankruptcy court may have imposed an erroneous standard of proof on the plaintiff. The use of a threshold burden based on "unequivocal medical testimony" understandably has caused confusion in tort cases. The Pennsylvania Commonwealth Court recently has attempted to explain and clarify the concept:
 
 
 15
 The phrase "unequivocal medical testimony" is a shorthand term lawyers and courts have devised and used for the rule of the common law, brought over to the field of workmen's compensation, to the effect that one contending that a condition of disability is the result of injury arising in the course of employment must, unless the disability is clearly the result of a work injury, produce the expert medical testimony that the claimant's condition in the expert's professional opinion did come from the work experience.
 
 
 16
 Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board, --- Pa.Cmwlth. ---, 465 A.2d 132, 134 (1983).
 
 
 17
 In practice, therefore, the claimant must produce a competent medical expert who, with reasonable certainty, will give evidence of facts which, if accepted by the factfinder, will support an award.
 
 
 18
 In determining tort claims under the no-fault statute, Pennsylvania courts thus have applied a two-step analysis to evaluate medical evidence. First, the plaintiff must present expert medical testimony unequivocably establishing causation. It is clear from the record that Dr. Sadwin's statement that there was a causal link between the accident and Dobrowsky's ensuing symptom was sufficiently unequivocal to establish causation. See Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280, 1285 (1978). Indeed, at oral argument Hanover's attorney conceded the sufficiency of Dr. Sadwin's direct testimony unequivocally linking the injury with the accident.
 
 
 19
 After the plaintiff has presented unequivocal medical testimony on causation, the trial court must then evaluate, under a preponderance of the evidence standard, whether the accident, in fact, did cause the injury. At this point in the proceedings the factfinder must weigh all the evidence introduced to determine whether plaintiff has proved his case. Nowhere in its opinion, however, does the bankruptcy court refer to weighing all the testimony by using the "preponderance of the evidence" standard.
 
 
 20
 The bankruptcy court's use of a single legal standard based on unequivocal medical testimony against which it evaluated both the threshold issue of causation as well as the totality of the medical evidence was erroneous as a matter of law. Accordingly, the judgment of the district court, affirming the bankruptcy court order, will be vacated, and the case remanded to the district court for proceedings consistent with this opinion.
 
 
 
 *
 Honorable H. Lee Sarokin, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 40 P.S. Sec. 1009.101 et seq. (1983 Supp.)
 
 
 [2]
 In response to Northern Pipe Line, the Judicial Conference of the United States authorized the promulgation of local rules for the resolution of bankruptcy and bankruptcy-related claims, pending a Congressional revision of the bankruptcy legislation to cure the constitutional defect. The U.S. District Court for the Eastern District of Pennsylvania has enacted interim rules conferring limited jurisdiction by reference on the bankruptcy courts subject to review and to the entry of a final judgment by the district court. Rules for the Administration of the Bankruptcy System (E.D.Pa. December 21, 1982)