600 A.2d 1274

**Frank SODA, Individually and as Administrator of the Estate of Lorraine M. Soda, Deceased, Appellant,**

**v.**

**Geraldine P. BAIRD, D.O. and Louis D. Ellis, D.O. and K. & A. X–Ray Associates, Appellees.**

Superior Court of Pennsylvania.

Argued July 18, 1991.

Filed Dec. 18, 1991.

Jeffrey M. Stopford, Media, for appellant.

James L. Griffith, Philadelphia, for Baird, appellee.

Medford J. Brown, III, Norristown, for Ellis & K. & A. X–Ray, appellees.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This medical malpractice action was instituted in April, 1984 by Frank Soda and his wife, Lorraine Soda. They alleged that defendants Geraldine P. Baird, D.O. and Louis D. Ellis, D.O.[1] were negligent in care and professional advice they provided to Lorraine Soda in April, 1980, as more fully discussed below. Mrs. Soda died in May, 1985. The action was tried before a jury, in May, 1989, and the jury returned defense verdicts. After the dismissal of posttrial motions, a judgment was entered in favor of all of the defendants. This appeal is by plaintiff Frank M. Soda, both individually and as administrator of the estate of his deceased wife.

On appeal, it is claimed that the trial court erred in its instructions to the jury, as well as in its rulings that certain testimony could not be presented on behalf of the plaintiffs. The plaintiffs claimed that Dr. Baird, a family practitioner, and Dr. Ellis, a radiologist, were negligent in the care and advice they provided to Lorraine Soda when they saw her in April, 1980. In particular the plaintiffs contended that both defendants mischaracterized a mass in Mrs. Soda's left breast as a cyst, when in fact it was a cancerous growth. The plaintiffs further maintained that the two physicians were negligent in not recommending that Mrs. Soda undertake further testing, by having the mass in her breast subjected to a biopsy, which would have revealed that the growth was malignant. There is no question that Mrs. Soda did not undertake biopsy studies relating to the lump in her left breast until approximately two years and eight months later, when she visited her family physician, Dr. Dominic Gatti, in December, 1982. Upon the advice of Dr. Gatti, she visited a specialist, Dr. Paul S. Copit, and in turn, was referred to another specialist, Dr. Harvey Lerner. The lump in her breast was determined to be malignant, and in

---

1. Defendant–Appellee K. & A. X–Ray Associates was the professional organization under which Dr. Ellis practiced at all times material herein.

January, 1983, Dr. Lerner performed surgery to remove Mrs. Soda's left breast. Mrs. Soda's death occurred in May, 1985, after this litigation was commenced. Her death was caused by cancer which spread into other areas in her body from the mass in her left breast.

At the trial, in addition to the videotaped deposition testimony of Mrs. Soda, the plaintiffs presented the testimony of several other witnesses who related that Mrs. Soda had told them, after April, 1980, that she was relieved that the diagnosis had revealed that her problem was merely a cyst, and not anything more serious, or requiring more testing. One witness testified she heard Mrs. Soda receive such advice at Dr. Ellis' office.

The defendants testified to far different facts. Essentially, Dr. Baird related that after she manually examined the lump in Mrs. Soda's breast, she directed her to Dr. Ellis, for a mammogram. Dr. Baird testified that after receiving a report from Dr. Ellis that the mammogram indicated that the mass had the appearance of a cyst, she specifically told Mrs. Soda that the mammogram test was not a conclusive determination, and that she recommended that Mrs. Soda submit to a biopsy as soon as possible. She said Mrs. Soda became very upset and indicated she would have to get back to Dr. Baird about this. Dr. Ellis said he could not recall seeing Mrs. Soda in April, 1980, but that he would never tell a patient in such circumstances what he thought a breast mass might be. Rather, he indicated that his practice would simply be to refer the patient back to her treating physician. Various witnesses who were called by the defense, including some who had subsequently treated Mrs. Soda's cancer problem, testified that Mrs. Soda admitted to them that she had been advised in approximately 1980 that she should have had a biopsy but that she refused to undertake that examination, either because she was frightened or because she wanted to wait until she had medical insurance coverage to pay for the procedure.

In addition, the plaintiffs called an expert at trial who specialized in oncology and related problems. Dr. Baird

called similar medical experts to testify. Experts on both sides agreed that it was not the cancer in Mrs. Soda's breast, *per se*, that caused her death, but rather the spread of the cancer from her breast into other areas of her body. The plaintiffs' expert expressed a view that the delay in treatment of the cancer, from April, 1980 until January, 1983, was likely to have increased the risk of the spread of the cancer and the resulting death of Mrs. Soda. A defense expert testified, to the contrary, that by the time the cancer became large enough to be detected by the palpation examination of Dr. Baird, in 1980, it had already spread through Mrs. Soda's body, such that any delay in treatment between April, 1980, and January, 1983, had no impact on the ultimate outcome of her disease.

In response to special interrogatories, the jury found that Dr. Baird had been negligent, but that her negligence was not a substantial cause of the spread of the cancer in Mrs. Soda. Further, the jury found that Dr. Ellis and K. & A. X–Ray Associates were not negligent. Finally, the jury found that Mrs. Soda was contributorily negligent, and that her negligence was a substantial factor in bringing about her injuries.

Based upon this record, we now address the contentions raised on appeal by the plaintiff. First, we shall examine the claim that the trial court erred in excluding certain testimony offered by the plaintiffs at trial. The testimony in issue would have indicated that Mrs. Soda declared to others, after her examinations by Dr. Baird and Dr. Ellis, that she had been advised that she merely had a cyst, and that she did not need further testing because of any suspicion of a possible malignancy. Because of the significance of the issue of the credibility of Mrs. Soda's testimony versus the testimony of two physician defendants, as to what Mrs. Soda was told and advised by the two doctors in 1980, it would appear that such evidence could have been of some importance to the plaintiffs in the trial.

There was discussion at trial, and in the briefs of the parties on this appeal, concerning whether or not the excluded testimony, although hearsay, should have been admitted by the trial judge within one of the established exceptions to the hearsay rule. In his opinion in support of the denial of the plaintiffs' posttrial motions, the trial judge pointed out that the evidence in question, in addition to being in the nature of hearsay, was clearly cumulative to other evidence on the same issue which was offered at trial for consideration by the jury.

As a general rule, questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court, and may be reversed on appeal only when a clear abuse of discretion is apparent. *Lewis v. Pruitt,* 337 Pa.Super. 419, 487 A.2d 16 (1985). The exclusion of evidence is not grounds for the granting of a new trial if evidence of the same fact or facts was introduced by the party applying for a new trial. *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (1973). There is no basis for a reversal, and a new trial, if the excluded evidence was cumulative in nature.

As noted, the excluded evidence would have tended to show that Mrs. Soda represented to others that she had been told by the defendant doctors that she merely had a cyst, which did not require further testing or treatment, and such information greatly relieved her concern about the lump in her breast. The record shows that in addition to Mrs. Soda's own deposition testimony directly on that subject, significant additional evidence was introduced of the same nature as the hearsay testimony the judge excluded. Mrs. Soda's family doctor, Dr. Gatti, testified that Mrs. Soda reported to him that she had a cyst, based upon information she had received from another physician. A friend of Mrs. Soda, Fran MacNeill, testified that she was present when a physician from K. & A. X–Ray Associates—presumably Dr. Ellis—told Mrs. Soda that she had a cyst, and that she should not worry about it. Another witness for the plaintiff, Mrs. McNulty, provided testimony that

Mrs. Soda was relieved about the lump in her breast after she visited Dr. Baird. The jury also considered evidence that Mrs. Soda had told Dr. Lerner, who eventually removed her breast, that she had a history of a left breast mass for three years, with a mammography showing a cyst. Another acquaintance of Mrs. Soda, Kate Goldman, testified at trial that the decedent had said she was not going to have the cyst in her breast drained because she did not want to worry about it. Finally, while they were both precluded from testifying to the particular words Mrs. Soda had stated after consulting with the defendant doctors in 1980, both Mr. Soda and Mrs. Soda's mother testified she and they were greatly relieved that further medical attention was not required for the lump in Mrs. Soda's left breast.

All of this evidence, which was presented to the jury, was of the same nature, and about the same matters, as the hearsay testimony which the trial court excluded. Based upon the testimony of several witnesses, the jurors were presented with a substantial amount of proof that the decedent had told others that her 1980 examination by the defendant physicians led her to believe that she merely had a cyst, and that she did not have to undertake a biopsy, or have concern that the lump in her breast indicated any malignancy. Accordingly, it is clear that the excluded hearsay evidence would merely have been cumulative to substantial other evidence in the record on this issue. Therefore, we find no basis for the grant of a new trial based upon the evidentiary rulings which have been challenged by the plaintiffs.

■ We next turn to the contention that the trial court erred in several aspects of its instructions to the jury. An erroneous jury instruction may provide the basis for a new trial if it is shown that the instruction was fundamentally in error and that it may have been responsible for the verdict. *Eck v. Powermatic Houdaille*, 364 Pa.Super. 178, 527 A.2d 1012 (1987); *Smith v. Brooks*, 394 Pa.Super. 327, 575 A.2d 926 (1990), appeal denied, 527 Pa. 625, 592 A.2d 45 (1991).

Alleged errors in jury instructions cannot be taken out of context, but rather must be considered in relation to the entire charge, and in light of the evidence presented. *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977). If the charge has a tendency to mislead or confuse, rather than to clarify a material issue, a new trial is indicated. *Glider v. Commonwealth, Department of Highways*, 435 Pa. 140, 255 A.2d 542 (1969); *Takach v. B. M. Root Co.*, 279 Pa.Super. 167, 420 A.2d 1084 (1980). With these concepts in mind, we shall review the various challenges to the trial court's charge to the jury.

■ First, the plaintiffs assert that the trial judge erred in instructing the jury as follows:

"If you find that Mrs. Soda had a medical problem when she came to Dr. Baird for treatment, under no circumstances can Dr. Baird be found responsible for either the underlying medical problem from which Mrs. Soda suffered or from the consequences which would have flowed from the natural course of those medical problems.

Plaintiff has the burden of proof in establishing that Dr. Baird, by her conduct, caused some aggravation or a new condition, which is different from the natural consequences of the preexisting condition. And that burden can be met by competent medical testimony."

The plaintiffs claim that this charge was inexplicable and incorrect.

The plaintiffs point out that it was contended that the defendants' negligence precluded Mrs. Soda from getting earlier medical treatment that could have saved her life. It is argued that even if Mrs. Soda had cancer prior to the alleged neglect of the two defendant doctors, such would not have necessarily precluded any recovery in this case by the plaintiffs. The plaintiffs contend that under the rule established in *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), if a failure to treat a problem concurs with some other cause, a defendant physician can still be held liable, unless the evidence demonstrates that the other

cause would have produced the harm to the patient, independent of the neglect of the defendant medical practitioner. Plaintiffs maintain, however, that the above-referenced portion of the charge left the jurors with an erroneous impression concerning the nature of proof which had to be established in order for the jurors to find for the plaintiffs and against the defendants. We cannot agree with such contentions.

First, it must be recognized that the part of the charge now challenged by plaintiffs only referred to Dr. Baird, and made no reference to Dr. Ellis or K. & A. X-Ray Associates. Accordingly, there is no basis for the plaintiffs' suggestion that this aspect of the charge would entitle the plaintiffs to a new trial on their claims against the latter defendants.

As to the plaintiffs' claims against Dr. Baird, we also find no basis for ordering a new trial in this aspect of the trial court's charge to the jurors. It appears that when the trial judge made reference to the "natural course" of the decedent's medical problem when she visited Dr. Baird in 1980, he was referring to substantial evidence of record offered by the experts for the parties during trial, as to what the natural course of Mrs. Soda's cancer may have been. The plaintiffs' expert, Dr. Harris, testified there was no way to tell when the cancer started to spread throughout Mrs. Soda's body from her breast. Nevertheless, Dr. Harris opined that the natural course of the cancer was such that it probably spread throughout the body after April, 1980. On the other hand, Dr. Lerner, whose expert testimony was relied upon by Dr. Baird, related that the natural course of the cancer was such that by the time Mrs. Soda saw Dr. Baird, in April, 1980, the cancer was already present, and had metastasized, or spread, through her body in areas other than the breast. Dr. Lerner explained that by the time the lump was palpable in Mrs. Soda's breast, as it was during her April, 1980 visit with Dr. Baird, it was an indication that the cancer had already spread, and she was destined to die of the disease, regardless of whether treat-

ment had been instituted at that time, or at any time before she subsequently died.

The trial judge could have chosen other words to better explain to the jury that Dr. Baird could not be held responsible for any course of the cancer that, in its natural course, had already spread to other areas of her body. However, any misconception on that point that the jurors may have had, because of the wording used in the comment in question, was certainly cured by the following clear statement by the trial judge, at the conclusion of his charge to the jury:

"Now, I want you to think of this, but don't talk about it while you are home this evening because I don't want you to forget any of the charge or any of the arguments of counsel. The question, ladies and gentlemen, here for you to decide is whether the conduct of the defendants caused the spread of this cancer or increased the risk of its spreading. Is that clear to you? Now, remember I told you just a few moments ago about the spread of the cancer could be to some innocuous part or it could be to a vital part, and we do know that it did spread to a vital part. And you have to decide, based upon this evidence, whether it had already spread to a vital part on April of 1980. And if you determine that it had, which is the time when the plaintiffs are contending that there was the probability of medical malpractice, then you will have to determine whether the doctors, under that scenario, were negligent."

This statement to the jury certainly cured any misimpression which may have been created by the earlier comment.

Moreover, on the same issue, we cannot ignore that the trial court submitted the issues in dispute in this case to the jury in special interrogatories. In doing so, the court stated that the defendant physicians would be liable to the plaintiffs if the jury found that the defendants were negligent, and that such negligence was a substantial factor in the spread of Mrs. Soda's cancer. Such a specific inquiry targeted the particular issue of whether Dr. Baird and/or

Dr. Ellis acted or failed to act in such a way that contributed to the spread of cancer in Mrs. Soda's body from the mass in her breast. In light of this specific inquiry, and the responses issued by the jury, even if we concluded that the statements in question were possibly misleading, we cannot hold that they tainted the charge as a whole, or that they provide any justification for the grant of a new trial. Accordingly, we reject the plaintiffs' initial claim of error as to the trial court's instructions to the jury.

■■■ We next address the contention that the trial court improperly instructed the jurors that the plaintiffs had to prove, within a reasonable degree of medical certainty, that the defendants' negligence caused Mrs. Soda's death. In that regard, the plaintiffs cite the following portion of the trial court's charge to the jury:

"If you believe that it cannot be determined with reasonable medical certainty whether the alleged injuries sustained by Mrs. Soda subsequent to the treatment was or was not caused by an act of the doctors, or the failure to act on the part of the doctors, or by anything over which the doctors had control, then you should return a verdict in favor of the doctors."

The plaintiffs argue that in this part of the court's instructions, the trial judge indicated to the jury that there was a requirement not only that the plaintiff offer expert testimony that satisfies the "reasonable medical certainty" standard, but also that the plaintiffs' burden of proof in the case was one to demonstrate a right to recover with reasonable medical certainty, rather than merely based upon a preponderance of the evidence.[2] In that regard, the plaintiffs maintain that the court's charge mandated a much more strict burden on them than would be required in these

2. It is expected that expert medical opinions on causation be expressed within a reasonable degree of medical certainty. See *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971). It is also clear that the plaintiff in a medical malpractice case may prevail if before a fact finder based upon the preponderance of the evidence. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978).

circumstances under the standards enunciated in *Hamil v. Bashline, supra.*

Viewing the charge as a whole, we cannot agree that the jury, by the extract from the charge cited by the plaintiffs, was instructed that the plaintiffs had any burden of persuasion beyond that of presenting the jurors with the preponderance of the evidence. First, we believe that the "determination" referred to in the instruction is not the determination to be made by the jury, as argued by plaintiffs, but instead refers to the determinations of the medical experts who testified at the trial. The words used by the trial judge simply do not convey the instruction to the jurors to apply their own standard of reasonable medical certainty in evaluating the evidence.

Further, in our review of the entire charge, with regard to plaintiffs' contentions on this point, we cannot ignore the following portions of the charge which bear on whether the jury was properly instructed on the right of the plaintiffs to recover under the causation rules established in *Hamil v. Bashline, supra.*, and on the issue of the plaintiffs' burden of proof:

"In civil cases such as this one, the plaintiff has the burden of proving those contentions which entitle him or her to relief. When a party has the burden of proof on a particular issue, his contention on that issue must be established by a fair preponderance of the evidence. The evidence establishes a contention by a fair preponderance of the evidence if you are persuaded that it is more probably accurate and true than not.

To put it another way, think, if you will, of an ordinary balance scale with a pan on each side. On to one side of the scale place all of the evidence favorable to the plaintiff. On to the other place all of the evidence favorable to the defendant. If, after considering the comparable weight of the evidence, you feel that the scales tip ever so slightly or to the slightest degree in favor of the plaintiff, your verdict must be for the plaintiff. If the scales tip in

favor of the defendant or are equally balanced, your verdict must be for that defendant.

In this case, the plaintiff has the burden to prove, one, that either or both of the physicians were negligent, and that that negligent conduct was a substantial factor in bringing about the plaintiff's injuries, or Mrs. Soda's injuries.

If, after considering all of the evidence, you feel persuaded that those propositions are more probably true than not, then the plaintiff has maintained their burden. However, the defendant, as I told you earlier, has the burden of proving the contributory negligence of the plaintiff. And you must decide, after weighing the evidence, whether the defendant has maintained that burden.

\*     \*     \*     \*     \*     \*

When a defendant physician negligently fails to act or negligently delays in employing indicated diagnostic or therapeutic measures, and his negligence proximately causes injuries to his patient, the plaintiff does not have to prove to a certainty that proper care would have, as a medical fact, prevented the injuries in question. If a defendant physician's negligent action or inaction has effectively terminated his patient's chance of avoiding injuries, he may not raise conjectures as to the measure of the chances that he has put beyond the possibility of realization.

If there was any substantial possibility of avoiding the injuries, and the defendant has destroyed that possibility, he is liable to the injured party.

A causal connection between the injuries suffered and the defendant's failure to exercise reasonable care may be proved by evidence that the risk of incurring those injuries was increased by the physician's negligent conduct.

Now, the law recognizes that it's rarely possible to demonstrate to an absolute certainty what would have

happened in circumstances that the wrongdoer did not permit to come to pass.

\*     \*     \*     \*     \*     \*

Now, I want you to think of this, but don't talk about it while you are home this evening because I don't want you to forget any of the charge or any of the arguments of counsel. The question, ladies and gentlemen, here for you to decide is whether the conduct of the defendants caused the spread of this cancer or increased the risk of its spreading.

\*     \*     \*     \*     \*     \*

Now, I told you that the plaintiff had a burden of proof, and I want to clarify it. The plaintiff's burden of proof is by a preponderance of the evidence. And the defendants, in seeking to show that Mrs. Soda was negligent, have to do that by a preponderance of the evidence. The plaintiffs' case, in seeking to show that by a preponderance of the evidence that the defendants were negligent, they establish this if you believe their expert testimony, and it should be proven in cases of this nature by expert testimony, and that testimony coming from the experts must be testified to to a degree of reasonable medical certainty. Is that clear to you?"

These sections of the trial court's charge make it clear that the jurors were instructed as to the plaintiffs' right to recover under the increased risk of harm standard established in *Hamil v. Bashline, supra.*, and also were left without any doubt that the plaintiffs' burden of proof was to establish a preponderance of the evidence. The limited, out-of-context extract cited by the plaintiffs with respect to this argument provides no basis for the grant of a new trial.

■ We next address the contention of the plaintiffs that the trial court erred in requiring that the plaintiffs prove that the defendants caused the spread of the cancer in Mrs. Soda. The plaintiffs maintain that they never claimed that the defendants caused the spread of cancer, but rather contended that the neglect of the defendants was in their

failure to intervene to prevent the further spread of the cancer. They argue that the court's charge made it appear that they had to prove that the defendants actually spread the cancer. In raising this claim, the plaintiffs do not cite a particular section of the trial court's charge to the jury, but rather indicate that the trial court generally defined the injuries in question as the spread of cancer, particularly in the special interrogatories submitted to the jury.

In our discussion of the plaintiffs' allegations that the trial court's charge was improper, under *Hamil v. Bashline, supra.*, and in relation to the preponderance of proof burden of proof, extended portions of the trial court's charge were set forth in this opinion. Those same sections of the charge negate the plaintiffs' contentions that the trial court suggested to the jury that the defendants could only be liable if they were responsible for actively spreading the cancer in Mrs. Soda's body. Rather, the trial judge informed the jurors that if a defendant physician negligently fails to act or to employ indicated diagnostic therapeutic measures, when such measures might possibly have resulted in the avoidance of the harm caused to the plaintiff, the defendant physician is liable to the injured party. Reading the charge as a whole, we find no basis for the suggestion that the trial judge instructed the jurors that in order to hold defendants liable they had to find that the plaintiffs had proved that they caused the spread of the cancer in the decedent. Therefore, we also reject that claim of error.

■ Finally, we address the plaintiffs' contention that the trial court improperly instructed the jury concerning the distinction between negligent conduct of a defendant physician and errors in judgment by a physician. We have reviewed the section of the trial court's charge to the jury concerning errors in judgment. In that regard, we find that the charge comported with the principle that a physician may not be held liable in a case such as this, merely upon evidence of the commission of an error in judgment. *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963); See also *McAvenue v. Bryn Mawr Hospital*, 245 Pa.Super. 507, 369 A.2d 743

(1976). As part of its charge concerning a physician's errors in judgment, the trial court properly instructed the jury that a physician is not excused for an error of judgment which is negligent, gross or reckless. The plaintiffs' final argument of reversible error with regard to the jury instructions is not convincing, and we find it does not establish any basis for a new trial.

The judgment of the trial court is hereby affirmed.