J.S43040/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATHRYN MARIA LOPEZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PABLO TRINIDAD LOPEZ, | : | |
| | : | |
| Appellant | : | No. 649 EDA 2014 |

Appeal from the Order Entered January 23, 2014
In the Court of Common Pleas of Lehigh County
Civil Division No(s).: 2014-PF-0048

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED OCTOBER 08, 2014**

Appellant, Pablo Trinidad Lopez, ("Husband") appeals from the order entered in the Lehigh County Court of Common Pleas, which granted the petition filed by Appellee, Kathryn Maria Lopez, ("Wife"), under the Protection From Abuse ("PFA") Act.[1] We affirm.

On January 17, 2014, Wife filed a PFA petition against Husband.[2] In the petition she averred, *inter alia*,

> [Husband] came to my house after years of being asked/told to stay away. He was surprised to find me

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 6101-6122.

[2] The parties are the parents of three minor children. **See** Wife's Pet. for Protection From Abuse, 1/17/14, at 3.

home, so he turned away, sneering, to call back 'Goodbye Sweetheart' and blow me a kiss in a menacing way. In the past, this kind of thing has been a pattern of escalation leading to a physical assault on me. He knows I am afraid of his presence near my home and does this to intimidate me, eventually leading to more erratic behavior, looking in my windows, following me in his car, forcing himself on me and physical altercations. I am afraid for my safety and am seeking an order to keep him away from my property so I can protect myself and any officers called will be able to do the same.

Wife's Pet. for Protection From Abuse, 1/17/14, at 3. On the same date, the court granted a temporary PFA order.

A hearing was held on January 23, 2014.[3] Wife appeared at the hearing *pro se*.[4] The court questioned Wife based upon her PFA petition. She testified that she gained possession of the marital residence in 2010. N.T., 1/23/14, at 5. The court asked Wife to explain the altercation which took place in 2010 and she testified:

[Wife: H]e came to my porch in the spring of 2010 after I brought the action to garnish his wages and he was very

---

[3] The instant certified record does not include the complete trial transcript. It contains pages forty-five to forty-nine. **See** Order, 1/23/14, at Ex. B. We have held that failure to include the trial transcript in the certified record typically precludes appellate review. **Floyd v. Phila. Elec. Co.**, 632 A.2d 1314, 1315 (Pa. Super. 1993). More recently, however, our Supreme Court held "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." Pa.R.A.P. 1021 *note* (citing **Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012)). In this case, because the trial transcript is part of Husband's reproduced record and neither party has disputed its accuracy, we will resolve Husband's claims on their merits. **See id.**

[4] Wife is represented by counsel in this appeal.

> upset with me. He never says directly, "This is because you went to court." But the pattern is, if I go to court, within a month or two there is a physical altercation.
>
> The Court: Describe the physical altercation.
>
> [Wife]: The first time he came to my porch, he was asking me if I was dating other men. I didn't want to talk to him. He grabbed a screwdriver that was there on the porch and threw it in my direction.
>
> The next year I took him back to modify the—the Order that we had with Domestic Relations. This was the time that he came to my house, even though I asked him not to. I had exclusive possession at that time. He looked in my windows. He actually entered the premises one time and began taking pictures. . . .

*Id.* at 14-15. Wife testified that Husband gained entrance to the house because their children answered the door. *Id.* at 15. She stated that "shortly after" the screwdriver incident, Husband followed her for three or four miles while she was driving. *Id.* at 16. Wife testified that she was afraid and called the State Police while she was driving. *Id.* She went to the State Police and they called Husband but could not do anything without a court order. *Id.* She testified about another incident:

> [Wife]: There was a time he came to get some property of his and he thought that he would be able to get into the basement and I didn't want him in my home, so I hired somebody to disassemble it and put it in the garage, which angered him. He was upset that he wouldn't get to go in the house.
>
> *       *       *
>
> That's when he forced himself on me in the garage and I pushed him back and screamed.

The Court: When you say, "he forced himself," that—I take that language to mean like sexually.

[Wife]: Yes.

\*     \*     \*

The Court: What did he do?

[Wife]: He moved in to kiss me and his hands were just not where they should be.

\*     \*     \*

There were two men that were with him.  Even though they were clearly friends of his, I thought maybe if I drew some attention maybe he wouldn't do anything.  And he did back off.

The Court: . . . Were there some other times where it escalated?

[Wife]: . . . When he learned that I hired a lawyer [in 2010], he punched a hole in the wall behind where I was standing.

The Court: Was this at your house?

[Wife]: Yes.

\*     \*     \*

Punched a hole in the wall.  And when I wanted to take a picture of it to give to my lawyer, he slapped my hands so that my cell phone fell and he grabbed my cell phone and smashed it there in front of the Children.

The Court: . . . Any other times?

[Wife]: Yes.  Valentine's Day, 20[12].

*Id.* at 17, 18, 19. Wife stated that when she was picking the children up from Husband, her son, who "has a neurological issue," was in Husband's car and appeared to be unconscious. *Id.* at 20. Wife testified:

> . . . I opened [my son's door] and asked him if he was okay. And [Husband] was furious. He jumped out of the car and he yelled at me and used the car door to shove me. I was trapped between the car door . . . and the car. And I pushed back.

*Id.*

On cross-examination, Wife stated that Husband had not "physically done anything since February of 2012." *Id.* at 31. She testified: "I don't think it's unreasonable for me to believe that this will end up the same way it always does, which he comes to my home which he believes is his, makes comments which are inappropriate, and then comes to me and physically assaults me." *Id.* Wife testified she was in fear of bodily injury as a result of Husband's pattern of escalated aggression and stalking. *Id.*

Husband testified at the hearing that the incidents described by Wife related to a prior PFA petition filed July 1, 2010, which was later withdrawn. *Id.* at 36-37. He testified that he posed no risk of harm to Wife. *Id.* at 37.

The trial court found Wife to be credible. *Id.* at 46. On January 23, 2014, the court entered an order granting Wife's request for a final PFA order which provided that Husband "shall not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to" Wife. Order, 1/23/14, at 3. The order further evicted and

excluded Husband from Wife's residence, and provided that Husband can only contact Wife to discuss custody issues. *Id.* at 3, 4. The order is in effect until January 22, 2017. *Id.* at 1. This timely appeal followed.[5] Husband was not ordered to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Husband raises the following issues for our consideration:

> 1. Whether the lower court erred when entering a [PFA] Final Order against [Husband] in the absence of sufficient evidence of abuse?
>
> 2. Whether the lower court erred in its finding that [Husband's] actions constituted abuse as defined by the [PFA Act] at 23 Pa.C.S. § 6102?

Husband's Brief at 4.

We address Husband's issues together because they are related.[6] Husband argues that Wife has not established by a preponderance of the

---

[5] The final PFA order was entered on January 23, 2014. The thirtieth day thereafter was Saturday, February 22, 2014. *See* Pa.R.A.P. 903(a). Appellant filed his notice of appeal on Monday, February 24, 2014 and it was therefore timely. *See* 1 Pa.C.S. § 1908 (providing that when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

[6] We note that the argument section of Husband's brief does not comply with Pa.R.A.P. 2119(a), which provides:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

evidence that she is a victim of abuse as defined by the PFA Act, specifically 23 Pa.C.S. § 6102. Husband's Brief at 8. Husband contends the record is devoid of evidence that Wife "was reasonably in fear of imminent serious bodily injury." *Id.* at 9. While Husband concedes that the court may consider evidence of past incidents of abuse, "the fact that such allegations were made by [Wife] and subsequently withdrawn prior to a final hearing undermine the weight such allegations carry." *Id.* at 10. Husband avers there is no authority for the "court to consider prior *ex parte* [PFA petitions] which were withdrawn prior to a final hearing." *Id.* Husband claims that the PFA petition contains only one allegation and therefore it could not be construed to satisfy the course of conduct requirement of Section 6102. *Id.* at 11. We hold no relief is due.

> When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference[s], determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. **This Court defers to the credibility determinations of the trial court** as to witnesses who appeared before it. Furthermore, the preponderance of the evidence is defined as the greater weight of the evidence, *i.e.*, **to tip a scale slightly is the criteria or requirement for preponderance of the evidence**.

---

*See* Pa.R.A.P. 2119(a).

***Ferko-Fox v. Fox***, 68 A.3d 917, 926-27 (Pa. Super. 2013) (citation omitted and emphasis added).

"The purpose of Pennsylvania's [PFA Act] is to protect victims of domestic violence from those who perpetrate such abuse; its primary goal is '**advance prevention** of physical and sexual abuse.'" ***Lawrence v. Bordner***, 907 A.2d 1109, 1112 (Pa. Super. 2006) (emphasis added).

Section 6102(a) of the PFA Act defines abuse as follows:

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).
>
> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal

> prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a)(1)-(5).[7]

> "In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury . . . ." **Raker v. Raker**, 847 A.2d 720, 725 (Pa. Super. 2004). The intent of the alleged abuser is of no moment. **Id.** In discussing the appellant's argument concerning incidents not contained in the petition and too remote in time, the **Raker** court stated:
>
> > Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present. **Soda v. Baird**, [ ] 600 A.2d 1274 ([Pa. Super.] 1991). In

---

[7] We note that the trial court did not identify which of these acts it found to be applicable in the instant case. In **Custer v. Cochran**, 933 A.2d 1050 (Pa. Super. 2007), this Court opined:

> The Act defines "abuse" as one of the five enumerated acts which we have quoted above. **See** 23 Pa.C.S.A. § 6102. Although in issuing the PFA order the trial court did not specify which of these acts it found, only two have possible application herein: "Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon," **id.** § 6102(1), or "Placing another in reasonable fear of imminent serious bodily injury," id. § 6102(2). Because we find that the evidence was sufficient to support the PFA order under the first category, we need not address the second.

**Id.** at 1058. Analogously, in the case *sub judice*, only two of the defined acts have possible application, *viz.*, Sections 6102(2) and (5). We find the evidence was sufficient under Section 6102(2), therefore we need not discuss Section 6102(5). **See id.**

> ***Snyder v. Snyder***, [629 A.2d 977 (Pa. Super. 1993)], the court held that a person filing a protection from abuse petition will not be "rigorously limited to the specific allegation of abuse found in the Petition." [***Id.***] at 981.  The court further held that in light of the purpose of the Act to "prevent imminent harm to abused person(s)," some flexibility must be allowed in the admission of evidence relating to past acts of abuse. ***Id.*** [ ] at 982.
>
> ***Miller v. Walker***, [ ] 665 A.2d 1252[, 1259 (Pa. Super. 1995)].  Moreover, the ***Miller*** court held that **it was not an abuse of discretion for the court to consider evidence of abuse that occurred six years earlier**.  The court reasoned that:
>
>> In light of the protective purposes of the act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order.  If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony.  However, it was not an abuse of discretion for the trial court to hear the evidence.  **Past abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order**.
>
> ***Raker***, 847 A.2d at 726. ***See Custer*** [***v. Cochran***, 933 A.2d 1050], 1059 n. 11 [(Pa. Super. 2007)] (relying on ***Raker*** and stating that "**[i]t is proper for a trial court to admit evidence of prior abusive acts not raised in the PFA petition**").

***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263-64 (Pa. Super. 2008)

(emphasis added); ***see also Hood-O'Hara v. Wills***, 873 A.2d 757, 761 (Pa.

Super. 2005) (court properly considered incidents occurring nearly eight

years prior to PFA petition).

"Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. **The petitioner's testimony is sufficient if it is believed by the trial court.**" *Custer*, 933 A.2d at 1058 (emphasis added).

The trial court found Wife's testimony that she was in fear of bodily injury as a result of Husband's pattern of escalated aggression and stalking credible. N.T. at 45-46. Husband did not deny the occurrence of the past events testified to by Wife. *See* N.T. at 32-42. The court opined: "It strikes me that this is very close to the reasons why [the PFA] was created." *Id.* at 46. The trial court did not err in considering prior abusive acts, including any events related to a prior PFA petition. *See Buchhalter*, 959 A.2d at 1263-64. Viewing the evidence in the light most favorable to Wife, based upon the trial court's credibility determination, we find the evidence was sufficient to enter a PFA order. *See Ferko-Fox*, 68 A.3d at 926-27.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2014

- 11 -