J-A02003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WENDY BOUSLOUGH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANNY WASNEY | : | |
| | : | |
| Appellant | : | No. 392 WDA 2025 |

Appeal from the Order Entered March 6, 2025
In the Court of Common Pleas of Blair County
Civil Division at No: 2024 04183

BEFORE: STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY STABILE, J.:　　　　　　**FILED: April 9, 2026**

Danny Wasney (Appellant) seeks review of an order entered by the Court of Common Pleas of Blair County (trial court) granting the protection from abuse (PFA) petition filed by Wendy Bouslough (Appellee). Following an evidentiary hearing, the trial court entered a PFA order prohibiting all contact between Appellant and Appellee for a period of 36 months and requiring Appellant to surrender his firearms. Appellant now contends that the PFA order must be vacated because the evidence was legally insufficient to support it; the trial court relied upon several pieces of evidence that were erroneously admitted at the PFA hearing; and the length of the PFA order was excessive. Finding no merit in these claims, we affirm.

The underlying facts of this case are as follows. Appellee filed a PFA petition on December 30, 2024, alleging that she and Appellant had been romantically involved for the prior six years, since April 2018. However,

Appellee became afraid of Appellant due to his behavior both before and after the date on which they split up, in early April 2024. Specifically, Appellee was concerned that Appellant seemed to be stalking her, as evidenced by his unexpected appearance at various places Appellee would go. On one occasion, Appellee discovered that the passenger side door of her car had been vandalized in a parking lot. Her car had been "keyed," and video surveillance of the area appeared to show Appellant committing the act.

The trial court held a hearing on the PFA petition at which Appellee took the stand. *See* N.T. Hearing, 3/4/2025, at 1-54. She testified that, over the course of their relationship, Appellant became increasingly possessive and demanded to know her whereabouts at all times. Appellant would verbally abuse her with condescending language; he also spoke of his ex-girlfriends in vulgar terms. *See id*., at 15. There had been little to no physical harm inflicted by Appellant, but (over Appellant's objection) Appellee did recount that he once, in June 2024, "grabbed a hold of [her] arm and whipped [her] around" when Appellee did not walk beside him at a concert. *Id*, at 4.

As to Appellant's possessiveness, Appellee testified that he had purchased a Garmin watch for her as a Christmas present in 2022. Appellant had purchased the same watch for his son, who was away at college, and Appellant explained that he could "track" him with the device. *Id*., at 17. After they had split up, Appellee feared that Appellant had also been using the watch to learn her own whereabouts. Appellant demonstrated this by appearing at places Appellee would go or knowing where she had gone without

Appellee having told him. This behavior seemed to fit a pattern, as Appellant had confided to Appellee that he had once broken into an ex-girlfriend's apartment when she was not home. *See id*., at 14-15.

Appellee described two incidents in which Appellant would harass her by playing "games" while the two were driving in separate cars. In August/September 2024, Appellant pulled out of his office parking lot and began following Appellee down the road. He then repeatedly sped up and slowed down but did not pass Appellee's vehicle even after she slowed down to let him go by. *See id*., at 4. Appellant followed Appellee in this manner for about a half mile. *See id*., at 5.

Again, on October 30, 2024, Appellee was driving near Appellant's home to pick up medication for her daughter at a grocery store. Appellant then quickly pulled out in front of her. Appellee tried to slow down to put distance between herself and Appellant's vehicle, but he would then also slow down so that she would have to catch up. This continued until Appellant turned at a traffic light and Appellee drove straight through an intersection. *See id*. However, after picking up the medication, Appellee saw Appellant pulling into the grocery store parking lot. Appellee then got back into her car and drove to work. *See id*., at 6.

Later that same day, while Appellee was at work, she was advised by an acquaintance that the passenger side of her car had been "badly keyed." *See id*., at 7. Appellee suspected that Appellant had vandalized her vehicle earlier that day when it was parked at the grocery store. She then reported

the incident to the police who obtained a copy of a surveillance video of the parking lot.

At the PFA hearing, Appellant objected to the video's admission on authentication grounds and the objection was overruled.  *See id*., at 9-10. The video was played in court and it showed an individual (identified by Appellee as Appellant), parking his own vehicle a few rows away from Appellee's car.  Appellant is seen sitting in his vehicle for a moment before exiting it and walking straight toward the passenger side of Appellee's car. The video purports to show Appellant reaching into his pocket for an object and then extending the hand holding that object as he walks from one side of the passenger side door to the other, leaving a deep scratch.  *See id*., at 9-10.

After verifying that Appellant had vandalized her car, Appellee pressed criminal charges against him and petitioned for a PFA Order.  Appellee testified that she had not reported the previous incidents other than the car vandalism because she was afraid of how Appellant would react and she lacked video evidence.

Moreover, Appellee stated that she feared that Appellant would cause her physical harm, and that when in public places, she would "look over [her] shoulder all the time." *Id*., at 14.  This fear would compel Appellee to stay at home.  She stated that her "whole family is afraid." *Id.*., at 44.  Over Appellant's hearsay objection, Appellee testified that her mother (who

Appellee lived with) would stay home often as well, to the extent that "she feels like she lives in a dungeon." *Id*., at 14.

At the conclusion of the hearing, the trial court granted Appellee's petition, and a PFA order was entered.[1] Appellant was directed not to have any contact with Appellee for 36 months, and to surrender to the sheriff all of his firearms within 48 hours. *See* Trial Court Order, 3/6/2025; N.T. Hearing, 3/4/2025, at 59-60. Appellant filed a motion for reconsideration on March 14, 2025, alleging numerous errors in the order. The motion was denied, and Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In his brief, Appellant now raises the following eight issues for our consideration:

> I. Whether there was sufficient evidence to support the granting of the [PFA Petition] and the entry of the [PFA] Order.
>
> II. Whether there was any evidence presented at the hearing, that would support a finding of abuse under 23 Pa.C.S.A. § 6102(a), subsections (1) through (4) under the definition section which defines "Abuse" for purposes of the [PFA] Act.
>
> III. Whether the evidence was sufficient to support the granting of the [PFA Petition] and the entry of the [PFA] Order based on 23 Pa.C.S.A. § 6102(a), subsection (5) under the "Abuse" definition, which requires proof, by a preponderance of the evidence, that the accused party, was "knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury."

---

[1] The trial court had entered a temporary PFA order on December 30, 2024.

IV. Whether the evidence was sufficient to support a finding that any of the encounters averred in the Appellee's PFA Petition, or about which the Appellee testified at the hearing, involved any threat or suggestion that the Appellant might inflict on the Appellee physical pain or impairment of a physical condition, pursuant to the definition of "bodily injury" under 18 Pa.C.S.A. [§] 2301.

V. Whether the [trial] court erred and/or abused its discretion, and deprived the Appellant of his right to due process as provided in the 5th and 14th Amendments to the United States Constitution, by permitting the Appellee to testify about an incident that allegedly took place in June of 2024 in which the parties were allegedly at a concert, and the Appellant grabbed her arm and "whipped her around," when the same was never averred in the Petition, nor did the Appellee testify about it at the preliminary hearing involving criminal charges arising from the same allegations as set forth in the PFA Petition.

VI. Whether the [trial] court erred and/or abused its discretion when it overruled Appellant's counsel's objection to the admission and viewing of a security camera video from the . . . Grocery Store parking lot, and permitting the Appellee to testify about its contents, without it properly being authenticated by evidence sufficient to support a finding that the video fairly and accurately represented that which it purported to depict. (*See Nyce v. Muffley*, 119 A. 2d 530 (Pa. 1956)).

VII. Whether the [trial] court erred and/or abused its discretion by permitting, over the objection of counsel for the Appellant, testimony of the Appellee that she lives with her 85 year old mother who feels like she lives in a dungeon.

VIII. Whether the [trial] court erred and/or abused its discretion in directing that the [PFA] Order have a duration of three years under all of the facts and circumstances of this case.

Appellant's Brief, at 8-11 (claims reordered).[2]

_____

[2] Appellant had, in his 1925(b) Statement included a challenge to the firearm restriction imposed in the order on review. That issue was subsequently
*(Footnote Continued Next Page)*

For ease of disposition, we address Appellant's first four claims together, as they all implicate nearly identical facts and governing law. Appellant contends in these claims that the PFA order was not supported by legally sufficient evidence of "abuse," as the term is defined in the Protection From Abuse Act (PFA Act). *See* 23 Pa.C.S.A. § 6102(a).

On review of a claim challenging the sufficiency of evidence supporting a PFA order, the following standard applies:

> We review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*S.G. v. R.G.*, 233 A.3d 903, 909 (Pa. Super. 2020) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999)).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (quoting *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa. Super. 2008)).

The Protection From Abuse Act defines "abuse," in pertinent part, as follows:

---

withdrawn (*see* Appellant's Brief, at 24), so it is unnecessary for this Court to address its merits.

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood.
>
> \* \* \* \*
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of **bodily injury**[.]

23 Pa.C.S.A. § 6102(a) (emphasis added). "Bodily injury," in turn, means an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.[3]

The evidence of abuse is subject to a preponderance of the evidence standard. *See* ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019). A preponderance of the evidence means "the greater weight of the evidence, i.e., [enough] to tip a scale slightly." ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004).

In the present case, we find that Appellee introduced sufficient evidence of abuse to support the trial court's PFA order. Appellee testified at the PFA hearing that Appellant had harassed and followed her, reasonably putting her in fear of bodily injury. The trial court credited her testimony that Appellant played "games" on the roadway when the two were in their respective vehicles, and that he used electronic devices to track Appellee's whereabouts.

---

[3] The PFA Act does not define "bodily injury" for purposes of the Abuse of Family Chapter, but the definitions section of that chapter provides that the "[t]erms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses)." 23 Pa.C.S.A. § 6102(b).

These allegations were corroborated in part by surveillance video footage showing Appellant appearing at a grocery store where Appellee's car was parked, and vandalizing the car with a sharp object. In addition, Appellee testified that Appellant admitted to breaking into the apartment of an ex-girlfriend. Appellee testified that she was living in fear that Appellant might become violent against her and her family. All of these combined circumstances allowed the trial court to find, by a preponderance of the evidence, that Appellant had engaged in a course of conduct which reasonably placed Appellee in fear of bodily injury. Thus, Appellant's first four claims have no merit.

Appellant's fifth claim is that trial court erred in permitting Appellee to testify that he once grabbed her by the arm and "whipped" her around. He argues that this incident was beyond the scope of the PFA hearing because it was not included in the allegations of the PFA petition and had not been mentioned at the preliminary hearing for the related criminal case.

The admission or exclusion of evidence is within the sound discretion of the trial court, and such rulings may only be reversed on appeal to remedy an abuse of that discretion. *See Soda v. Baird*, 600 A.2d 1274 (Pa. Super. 1991). In the context of a PFA hearing, a person seeking a protective order will not be "rigorously limited to the specific allegation of abuse found in the Petition." *Snyder v. Snyder*, 629 A.2d 977, 981 (Pa. Super. 1993). The purpose of the PFA Act is to "prevent imminent harm to abused person(s)," justifying a liberal approach concerning the admissibility of evidence relating

to past acts of abuse. ***Id.***, at 982 (citing 23 Pa.C.S.A. § 6106); ***see also Raker v. Raker***, 847 A.2d 720, 726 (Pa. Super. 2004) (same); ***Miller on Behalf of Walker v. Walker***, 665 A.2d 1252, 1259 (Pa. Super. 1995) (same).

In the present case, Appellant's alleged grabbing of Appellee's arm was certainly relevant to the central inquiry as to whether Appellee had a reasonable fear of bodily harm. Although Appellee did not specifically refer to this conduct in her petition, the timing of the act (June 2024) corresponded to the general time frame which the petition addressed (from 2018 until the date the petition was filed (December 30, 2024)). It was therefore within the trial court's discretion to consider Appellee's testimony about this incident, and then to determine the assigned weight. ***See Raker***, 848 A.2d at 726. Finding no abuse by the trial court in this regard, we conclude that Appellant's fifth claim has no merit.

Appellant's sixth claim is that the trial court erred in admitting a recording of video surveillance footage which purported to show him vandalizing Appellee's vehicle on October 30, 2024. According to Appellant, this evidentiary ruling was erroneous because the video had not been properly authenticated prior to its admission.

The admission or exclusion of evidence is "within the sound discretion of the trial court, and may be reversed on appeal only when a clear abuse of discretion is apparent." ***Soda***, 600 A.2d at 1277. "Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence,

the proponent must produce sufficient evidence to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Demonstrative evidence, such as a video recording, may be authenticated by testimony from a witness who has knowledge "that an item is what it is claimed to be." Pa.R.E. 901(b)(1); **see also Nyce v. Muffley**, 119 A.2d 530, 532 (Pa. 1956). One relevant example of authenticating evidence is for the proponent to present evidence concerning its "appearance . . . , or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b)(4).

Here, Appellee authenticated the video surveillance recording by identifying where and when the video was taken (the parking lot of a grocery store), and how it was obtained (from the Altoona Police Department). She identified her own vehicle in the video, and its location at the grocery store where she was picking up medication on the day in question. Additionally, Appellee testified that she could recognize Appellant in the video based on "his walk, his mannerisms and the jacket that he is wearing and his truck." N.T. Hearing, 3/4/2025, at 10.

Moreover, it was undisputed that on October 30, 2024, the morning Appellee's car was keyed, Appellee reported the incident to the police. In fact, as noted by Appellant at the hearing, there was a pending criminal case against him stemming from that incident. This established that Appellee's car was indeed vandalized on that particular date, so the video capturing that incident was necessarily created at a contemporaneous point in time.

Appellant had the ability to cross-examine Appellee on her ability to properly authenticate the video but did not do so. None of the facts pertinent to the authentication of the video were otherwise called into question. Thus, the trial court did not abuse its discretion in admitting the video, as it was properly authenticated.

Appellant's seventh claim is that the trial court abused its discretion in allowing Appellee to testify that her elderly mother "feels like she lives in a dungeon." *Id*., at 14.

Hearsay is defined as a "statement" made out-of-court by the "declarant," which is offered into evidence "to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a). "Declarant" means "the person who made the statement." Pa.R.E. 801(b).

Hearsay is generally inadmissible at trial unless a recognized exception applies. *See* Pa.R.E. 802. One such exception is a statement in which a declarant conveys a "state-of-mind" or physical condition "such as mental feeling, pain, or bodily health[.]" Pa.R.E. 803(3).

In the present case, the trial court did not run afoul of the hearsay rule in admitting Appellee's testimony about her mother feeling "like she lives in a dungeon." First of all, the hearsay rule was not implicated because the testimony does not convey a "statement," as it contained no out-of-court assertion or nonverbal conduct. *See* Pa.R.E. 801(a). Appellee merely

conveyed how her mother "felt," and there was no mention of any assertion, or nonverbal conduct, by her mother.

Moreover, even if this testimony could be construed as a "statement" by Appellee's mother, it was clearly not introduced for the truth of the matter asserted. The truth of whether Appellee's mother felt as if her home was a "dungeon" had no bearing on any issues at hand. In context, rather, Appellee recounted this statement only to explain that she and her family had been reluctant to go out in public, for fear of encountering Appellant. *See generally Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471-72 (Pa. 2021) (explaining that statement "I can fly to the moon" is not hearsay because it "would not be introduced to prove that [the declarant] actually can fly to the moon.").

Alternatively, even assuming Appellee's reference to her mother's "feeling" could qualify as hearsay, it would be admissible under a recognized exception. The statement would be relevant to prove the then-existing state-of-mind of Appellee's mother. *See* Pa.R.E. 803(3). That is, the statement of mental expression by Appellee's mother tended to show that she was uncomfortable remaining in her home. The logical implication of that statement is that Appellee and her family were involuntarily staying home often due to their fear of Appellant. Thus, the trial court did not abuse its discretion in admitting Appellee's testimony on this subject, as the hearsay rule was not implicated, and an exception would have applied regardless.

Appellant's eighth and final claim is that the trial court abused its discretion in imposing a PFA order with a three-year term. He contends that the facts of this case would justify a term of no more than 60 days because no actual abuse occurred, and Appellee never sustained a bodily injury.

Under section 6108(d) of the PFA act, the trial court may enter protective orders that remain in force for a "fixed period of time not to exceed three years." 23 Pa.C.S.A. § 6108(d). Subsection 6108(e) authorizes unlimited extensions of a PFA order where one of the enumerated grounds for an extension has occurred, such as a violation of an existing PFA order, or when a defendant's conduct "indicates a continued risk of harm to the plaintiff, minor child or companion animal." 23 Pa.C.S.A. § 6108(e)(1)-(3).

We discern no abuse of discretion on the part of the trial court in imposing a three-year term for the PFA order. Appellee presented evidence that Appellant engaged in a course of conduct, over a period of at least several months, which reasonably placed Appellee in fear of bodily injury. The PFA Act itself does not require the plaintiff seeking a protective order to establish bodily harm in order for a three-term to be imposed. Nor does Appellant cite any such authority. *See generally T.K. v. A.Z.*, 157 A.3d 974, 978 (Pa. Super. 2017) (holding that appellant waived claims of an excessive three-year term for a PFA order by not citing any relevant authority to support that contention). Thus, we find no merit in Appellant's final claim, and the order on review must be upheld.

Order affirmed.

- 14 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/9/2026